## J. W. TRIPLER, AGENT, APPELLANT, *v.* THE MOUNT PLEASANT COMMERCIAL AND SAV-INGS BANK, RESPONDENT.

ACTION TO RECOVER DEPOSIT — FACTS UNDER WHICH NO CAUSE OF ACTION SHOWN — REAL PARTY IN INTEREST.

In an action to recover a certain sum alleged to have been deposited in defendant's bank, for the use and benefit of plaintiff, it appeared that plaintiff, from Colorado, sent a check on a bank in that State to defendant, "for deposit to the credit" of one T.; that the check was entered by defendant for collection, and T. was so notified; that the check was never paid; that a draft on New York, by the bank on which the check was drawn, to cover the amount, was protested · that plaintiff and T. were notified of the protest; that plaintiff afterward sent defendant four other checks covering an amount equal to the first check, and requested a return of the protested draft for use in proving his claim against the insolvent Colorado bank; that plaintiff was not using his own money, but the money of C., and was acting as the agent of C., although he had an interest in the profits of the business conducted, as well as a salary from C. *Held*, that the proof does not show a cause of action in favor of plaintiff against defendant, and *Held further*, that plaintiff was not the real party in interest.

(Decided April 9, 1900.)

Appeal from the Seventh District Court, San Pete County, Hon. W. M. McCarty, *Judge.*

Action by plaintiff to recover the sum of $2,000 with interest, alleged to have been deposited by plaintiff in defendant's bank for his own use and benefit, but in the name of a third party, to be checked out by said third party. From a judgment for defendant, plaintiff appealed. *Affirmed.*

*S. S. Sherman, Esq., Messrs. Reid & Cherry,* and *L. R. Rhodes, Esq.,* for appellant.

That a payor is not a suitable agent for the collection of paper, and that one who so sends it, does it at his own risk, and is liable for all damages resulting therefrom, is fully established as the law, in this country. *Merchants' N. Bank* v. *Goodman,* 109 Pa. St., 422, S. C.; 2 Atl., 687; *Drovers' N. B,* v. *Provision Co.,* 117 Ill.; 100, S. C.; 7 N. E., 601; *German N. Bank* v. *Burns,* 12 Colo., 539; 21 Pac., 714; *Anderson* v. *Rodgers,* 53 Kan., 542; 21 Pac., 1067; *Minn. S. & D. Co.* v. *Met. Bank,* 78 N. W., 980; *First N. Bank* v. *Fourth N. Bank,* 56 Fed., 967; 1 Morse on Banks and Banking, Section 236a; 1 Daniel Negotiable Instruments, Section 328a.

As to the proposition that defendant's acts were gratuitous, without consideration and as a favor only, the supreme court of this State has held, in *Mound City Paint and Color Co.* v. *Com. Nat. Bank of Ogden,* 4 Utah, 353; S. C., 9 Pac., 709, that collecting commercial paper is part of the regular business of banking, and the following authorities sustain the proposition that, having the money in the bank for a few days, or the desire to accommodate and draw trade are good considerations for a bank to undertake to collect commercial paper, even if no exchange is charged. Also see Morse on Banks, Sections 215–275; *Merchants' Nat. Bank* v. *Goodman, supra;* 1 Daniel Neg. Instr., Section 324.

*D. D. Houtz, Esq.,* and *Ferdinand Ericksen, Esq.,* for respondent.

In the absence of an express contract, or course of dealing with Tripler from which an agreement to receive his check as cash could be inferred, the respondent might

treat it as cash, or receive it for collection at its election. *Scott* v. *The Ocean Bank in the City of New York*, 23 N. Y., 289; Boone's Law of Banking, Sec. 201.

A bank is the agent of the owner of a check or draft received by it for collection. *Nat. Bank* v. *Bank of Monroe*, 33 Fed. R., 408; 3 Am. & Eng. Ency. Law, 2d ed., 802; Boone's Law of Banking, Sec. 202.

The fact that a depositor's account is credited with the amount of the item taken for collection, does not of itself operate to transfer the title to the paper, for by the customs of bankers the collection is charged back at once if not paid. *Hazlett* v. *Com. Nat. Bank*, 132 Pa. St., 118; *Nat. Gold Bank* v. *McDonald*, 51 Cal., 64; *Marine Nat. Bank* v. *Fulton Bank*, 2 Wall., 256; *Levi* v. *Nat. Bank*, 5 Dill (U. S.), 104; *Scott* v. *Ocean Bank*, 23 N. Y., 289; *Dickerson* v. *Watson*, 47 N. Y., 439; 3 Am. & Eng. Ency. Law, 2d ed., 817.

Receiving the New York draft was not a payment of the check. It amounted to a payment of the check, conditioned that the draft were paid. *Turner* v. *Bank*, 3 Keyes, 425; *Steinhart* v. *Nat. Bank*, 29 Pac., 717; *Griffith* v. *Grogan*, 12 Cal., 317; *Wilsh* v. *Arlington*, 23 Colo., 332; *Brown* v. *Almstead*, 50 Cal., 162; *Paris* v. *Dreschbach*, 78 Colo., 15; *Good* v. *Singleton*, 40 N. W., 359; Barber's Law of Payment, 116.

The conclusion of the trial court, from the evidence before it, that appellant had ratified respondent's acts, is the only legitimate deduction to be made from the proof, and is in perfect harmony with the decision of the courts of the land upon the same question under similar circumstances. *Rathbun* v. *Steamboat Co.*, 76 N. Y., 376; *Gennisen* v. *Parker*, 7 Mich., 355; *Oil Works* v. *Jefferson*, 2 Lea (Tenn.), 581; *Merril* v. *Rocks*, 54 Fed., 450; *Commercial Bank* v. *Warren*, 15 N. Y., 577; Me-

chem on Agency, Secs. 148, 151; Am. & Eng. Ency. Law, 2d ed., 1195, 1207.

Appellant, having elected, after knowledge, to treat the act as his, for an instant, could not thereafter repudiate it.    Am. & Eng. Ency. Law, 2d ed., 1182; *Smith* v. *Cologan*, 2 T. R., 189; *Clark* v. *Van Riemsdyk*, 9 Cranch, 153; *Vaughn* v. *Sheridan*, 50 Mich., 155; *Andrews* v. *Ætna Ins. Co.*, 92 N. Y., 596.

### STATEMENT OF FACTS.

This is an action in which the plaintiff seeks to recover from the defendant the sum of $2,000, with interest, alleged to have been deposited by the plaintiff on September 18, 1897, for his own use and benefit, in the defendant's bank, in the name of Hans Tuft, to be checked out by the said Tuft in the purchase of cattle for the plaintiff, and that said sum was received by said defendant and placed to the credit of said Tuft, in said bank; that thereafter said defendant refused to allow either the said plaintiff or the said Tuft to check out said money or to pay over to the plaintiff, or to the said Tuft said money or any part thereof, although frequently requested so to do, and that said defendant still holds and retains said sum and every part thereof.

The answer admits the said agency of said Tuft; that the defendant is a corporation, and that the Bank of Montrose was a banking institution doing a banking- business at Montrose, in the State of Colorado, but denies all the other allegations of the complaint, and sets up, as a defense, certain facts which it is not necessary to mention.

The evidence adduced by the plaintiff, in substance, is as follows: The plaintiff testified that, on the 31st day of August, 1897, he, as agent, entered into an agreement with Hans Tuft, whereby the said Tuft was to purchase

cattle, at a certain price per head, for plaintiff, at a commission of $1.00 per head, the plaintiff to furnish the money for the purchase of the cattle; that in pursuance of said agreement, the plaintiff drew and sent to the defendant bank a check, of which the following is a copy:

"MONTROSE, COLO., Sept. 15, 1897.

"Bank of Montrose, Pay to the order of myself $2,-000, Two Thousand Dollars, with exchange.

Signed, J. W. TRIPLER, Agt."

Upon the back of this check the following indorsements were made:

"For deposit in the Mount Pleasant Commercial and Savings Bank, Mount Pleasant, Utah, to the credit of Hans Tuft, Monroe, Utah.

J. W. TRIPLER, Agt."

And

"Pay to the order of C. M. McClure, Cashier, for collection for account of Mt. Pleasant Com'l. & Savings Bank, Mt. Pleasant, Utah.

O. F. WALL, Cashier."

On cross-examination, the plaintiff testified that he signed the check as agent. To the question, "Is that your own money, or somebody else's?" he answered, "Somebody else's." He further testified, "I have an interest in it; that one Chapman is interested with me. My agreement with him is, he is to furnish money, and I act as his agent, and I get a salary and a share of the profits. If there is a loss it detracts from the profits, so I am interested in it. I get forty per cent of the profits." "I am conducting cattle business as agent. I receive money from Mr. Chapman to invest in cattle, and I get a salary and per cent of the profits. I buy and sell whenever I deem advisable. Have full charge of the business.

Mr. Chapman supplies me with money for it. I keep books, and account to him for the money I receive. Have to show up in either cattle or expenditures.''

O. F. Wall, a witness in behalf of plaintiff, called and sworn, testified:

'' I am cashier of defendant's bank, and was such cashier in September, 1897. I remember about this $2,000 transaction with Mr. Tripler. That money was not checked out of the bank by Hans Tuft. I never paid Mr. Tuft that $2,000, nor gave Mr. Tripler, or anyone else for him, the money. I never paid Mr. Tripler back the money. I never received any money on that check. I sent check to bank of Montrose immediately upon receipt of it. We received a draft for the check. Sent the draft to the Utah Commercial.''

It appears from the evidence that the draft of the bank of Montrose was drawn on the Hanover Bank of New York, and was protested.

O. F. Wall further testified, as follows: '' Mr. Tripler's instructions were when he sent the check, to place the amount to the credit of Hans Tuft. We did not do that. We entered it for collection. This was not entered upon the books to the credit of Mr. Tuft except for collection, and if paid it would be placed to his credit, but it wasn't placed to his credit. On receiving the check we entered it for collection. Mr. Tripler was not a patron of our bank. We had no acquaintance with him. We notified Mr. Tuft we had received it and entered it for collection. We sent the draft for credit. We received word the draft had been protested before we received the latter dated September 30. We sent Mr. Tuft a telegram that the draft had been protested for non-payment, and we charged the amount of it up to him immediately upon the receipt of the telegram. A check for $1,000, or more, would

not be received by our correspondent in Utah as a cash item.   For that reason we entered it for collection.   We received letter from Mr. Tripler dated October 15, demanding draft, and sent draft to him, this New York draft, and the bank has not had it since.   When we received the draft, we entered that for the credit of Mr. Tuft.   Mr. Tuft was permitted to check that out, that $2,000.   When we received word that the draft had been protested, we charged $2,000 up to Mr. Tuft, on his account, that we had given him credit for.   That charge was made when we got word that the draft was protested in New York, after we heard that the draft was protested, — the next day after, I should think.

On the same day, September 30, 1897, on which the said Hans Tuft was notified that said draft had gone to protest, said Tuft sent a telegram to the plaintiff notifying him of the fact, and the plaintiff immediately sent to the defendant the following letter:

"I just received a message from Mr. Hans Tuft that the draft sent you by the bank of Montrose had been protested.   I inclose four checks amounting to $2,000, which will make it good.   Please acknowledge receipt, and notify Mr. Tuft.          Respectfully,

J. W. TRIPLER."

And on the 15th day of October, 1897, also sent to the defendant the following letter :—

"Your favor dated the 11th inst, acknowledging the receipt of the four checks for $500 each, which I sent you on the 30th ult. to be deposited to the credit of Hans Tuft, in lieu of the N. Y. draft sent you by the bank of Montrose, which was protested, at hand.   As you have no doubt collected these checks by now, I write to ask

you to send me the protested draft in order that I may use it in proving my claim against the bank of Montrose.

Respectfully,

J. W. TRIPLER, Agt.''

In obedience to this request the draft was sent to the plaintiff.

At the time, and before, this request was made, it appears from the plaintiff's testimony that he was aware of the circumstances relating to the draft, and that his object in sending the four checks was to make good to the defendant the amount of the draft. These four checks were in the following form : —

'' PHILADELPHIA, SEPT. 18, 1897.

The Corn Exchange National Bank.

Pay to the order of J. W. Tripler, Agt., five hundred dollars ($500).

RICHARD H. CHAPMAN.''

On the back of each of these checks is the following : —

''For deposit in the Mount Pleasant Commercial & Savings Bank of Mount Pleasant, Utah, to the credit of Hans Tuft, of Monroe, Utah.

J. W. TRIPLER, Agt.''

When these checks were paid the amount of the same was credited, as above directed, to Hans Tuft.

After receiving the draft, as testified to by plaintiff, he caused a suit to be instituted against the Montrose bank, and its stockholders, to recover the amount of said draft. What the result of that suit was, or whether it has as yet been terminated, does not appear. Shortly after said draft was drawn the bank of Montrose suspended business on account of insolvency.

At the close of plaintiff's testimony, on motion of the defendant the trial court granted a non-suit, on the

ground that the evidence adduced failed to show any cause of action against the defendant, in favor of the plaintiff.

BASKIN, J.

The check on the bank of Montrose was not discounted by the defendant. At the time the check was forwarded to the defendant it was not acquainted with the plaintiff, and had had no transactions with him. We think it is clear from the plaintiff's own statements that he did not expect that the amount of the check upon its reception, and before its collection, should be credited to Hans Tuft. This is evident from his letter of September 30, in which he inclosed the four checks of $500 each, and from his letter of October 15, in which he stated, " As you have no doubt collected these checks (the four checks before referred to) by now, I write to ask you to send me the protested draft in order that I may use it in proving my claim against the bank of Montrose" The four checks were drawn in his favor, as agent, by Richard H. Chapman, and his indorsement was the same on these checks as on the check of $2,000 on the bank of Montrose, to-wit : "For deposit in the Mount Pleasant Commercial & Savings Bank of Mount Pleasant, Utah, to the credit of Hans Tuft, Monroe, Utah." In other words, it is clear that the check for $2,000, like the four checks, was sent to the defendant for the purpose of having the same collected through the defendant bank, and thereby to create a fund in said bank to the credit of Hans Tuft, to be drawn out by him in the execution of his agency. Upon the reception of said check the relation of creditor and debtor between the plaintiff and defendant did not arise, and has never since existed. If the amount of said check had been collected by the defendant, Hans Tuft would have

become the creditor of the bank, and as his agency was coupled with an interest in the fund, no one except himself would have had any authority to check against the same.

It also appears from the evidence that the plaintiff had no direct interest in the fund, but that he acted in the matter as the agent of Chapman. He drew the check for $2,000, as agent, not against any funds of his own in the bank of Montrose, but against the funds of Chapman. The only interest which the plaintiff had in the premises was his salary and a right to a share in the profits of the business which he was conducting as the agent of Chapman.

In no view of the case could the loss occasioned by the failure to pay the draft of the bank of Montrose fall upon the plaintiff. The draft was not made good by plaintiff, but by the four checks of Chapman. No part of the funds involved in the premises belonged to him. In his evidence he stated : "I am conducting cattle business as agent. I receive money from Mr. Chapman to invest in cattle, and I get a salary and a per cent of the profits. I buy and sell whenever I deem advisable. Have full charge of the business. Mr. Chapman supplies me with money for it. I keep books and account to him for the money I receive. Have to show up in either cattle or expenditures."

That the defendant also understood that the check was merely sent to it for the purpose before stated, is shown by the testimony of O. F. Wall, cashier of defendant's bank. He testified that "on receiving the check we entered it for collection. Mr. Tripler was not a patron of our bank. We had no acquaintance with him. We notified Mr. Tuft that we had received it and entered it for collection." No objection was made to this by Tuft

or the plaintiff, for such, we think, was the intention of all the parties.

Appellant's counsel complain of the method pursued by defendant in the premises.

As the defendant assumed the duty of collecting said check, if it failed in the proper performance of that duty it would be responsible to the party injured by reason of such failure, but not in the form of action resorted to in this case. This is an action to recover a deposit of $2,000, with interest, alleged to have been deposited in defendant's bank, for the use and benefit of plaintiff.

The evidence shows that no such deposit was ever made, and that the plaintiff is not the real party interested in the alleged deposit. A recovery by plaintiff would not bar an action by Chapman, the real party in interest.

It is evident that the plaintiff, at the time the draft was made good and the letters of September 30 and October 15 were written, did not consider the defendant in any way liable, but the idea of holding it was an afterthought.

It is ordered that the judgment of the court below be affirmed, with costs.

BARTOH, C. J.. and MINER, J., concur.