BAGLIN v. EARL-EAGLE MINING CO. et al.

No. 3348.    Decided June 30, 1919.    (184 Pac. 190.)    On Application
for Rehearing October 11, 1919.

1.  CORPORATIONS—ASSIGNMENT OF CERTIFICATE TO BROKER FOR SALE
    CARRIES TITLE. Where the holder of a certificate of corporation
    stock which was held under a pool agreement, after expiration
    of the period of the pool, assigned the certificate, *held* that,
    though the assignment was to a broker for the purpose of
    enabling him to sell the shares and was without consideration,
    it passed to him the legal title. (Page 580.)

Appeal from Third District.

2. CORPORATIONS—ON ASSSIGNMENT OF STOCK ASSIGNEE MAY COMPEL ISSUANCE OF CERTIFICATE. Though an assignment of corporate stock by an instrumnet which passed the legal title was without consideration and for the purpose of enabling the assignee to sell the stock, he may sue the corporation for refusing to issue certificates, he being for the purpose of the action the real party in interest, within Comp. Laws 1917, section 6495, the assignment protecting the corporation from further action by the true owner.[1]   (Page 580.)

3. CORPORATIONS—WHETHER REFUSAL TO ISSUE NEW CERTIFICATES TO ASSIGNEE CONSTITUTES CONVERSION. The refusal of a corporation to issue stock certificates to one entitled thereto may or may not constitute conversion, depending upon the character of the excuse the corporation has for not issuing the stock.[2]   (Page 583.)

4. CORPORATIONS—WHETHER GUILTY OF CONVERSION IN REFUSING TO ISSUE CERTIFICATE FOR JURY. Whether a corporation was guilty of conversion in refusing to issue stock to one entitled thereto, held, under the evidence, for the jury. (Page 583.)

5. EVIDENCE—REPORTS OF CURB TRANSACTIONS IN CORPORATE STOCK HEARSAY. In an action against a mining corporation for refusing to issue stock certificates to one entitled thereto, reports of curb transactions in such stock held hearsay, in the absence of any information as to the manner in which the reports were made up, and hence the admission of such evidence on the issue of damages was error.   (Page 585.)

On Application for Rehearing.

6. CORPORATIONS—REFUSAL TO ISSUE STOCK TO ASSIGNEE AUTHORIZES AT LEAST NOMINAL DAMAGES. The fact that a corporation converted stock by refusing to issue the same to one entitled thereto is sufficient to sustain an award of at least nominal damages in favor of the injured party.   (Page 587.)

7. APPEAL AND ERROR—INSUFFICIENCY OF EVIDENCE NOT ASSIGNED AS ERROR NOT REVIEWABLE. In an action against a corporation for damages for refusal to issue certificates of stock to one entitled thereto, where the corporation, on appeal from

---

[1] *Wines* v. *R. R. Co.*, 9 Utah, 228, 33 Pac. 1042; *Fritz* v. *Western Union T. Co.*, 25 Utah, 263, 71 Pac. 209; *Anderson* v. *Yosemite M. Co.*, 9 Utah, 420, 35 Pac. 502; *Culmer* v. *Clift*, 14 Utah, 286, 47 Pac. 85; *Mundt* v. *Comm. Bank*, 35 Utah, 90, 99 Pac. 454, 136 Am. St. Rep. 1023.

[2] *Coray* v. *Peery Irr. Co.*, 50 Utah, 70, 166 Pac. 672,

an adverse judgment, did not assign the insufficiency of the evidence of damages, that question cannot be considered. (Page 587.)

8. REPEAL AND ERROR—AMENDMENT TO ASSIGNMENTS OF ERROR ON MOTION FOR REHEARING DENIED. Where respondent's brief stated that the appellant corporation, which had wrongfully refused to issue certificates of stock to respondent, had not assigned as error the insufficiency of the evidence of damages, *held* that, on motion for rehearing, the appellant corporation was not entitled to have granted its application for leave to then amend its assignment of errors, so as to include an assignment of error as to the insufficiency of evidence.[3] (Page 588.)

Appeal from District Court, Salt Lake County, Third District; *P. C. Evans*, Judge.

Action by George Baglin against the Earl-Eagle Mining Company and others. From a judgment for plaintiff, the named defendant appeals.

REVERSED.

[a] *Bean* v. *Fairbanks*, 46 Utah, 513, 151 Pac. 338; *Ogden Valley T. & R. Co.* v. *Lewis*, 41 Utah, 183, 125 Pac. 687; *Harrison* v. *Harker*, 44 Utah, 541, 142 Pac. 716; *Swanson* v. *Sims*, 51 Utah, 485, 170 Pac. 774; *Marks* v. *Taylor*, 23 Utah, 152, 63 Pac. 897; *Genter* v. *Conglomerate Mfg. Co.*, 23 Utah, 165, 64 Pac. 362; *Wasatch Irr. Co.* v. *Fulton*, 23 Utah, 466, 65 Pac. 205; *Van Pelt* v. *Park*, 18 Utah, 141, 55 Pac. 331; *O. S. L.* v. *Russell*, 27 Utah, 457, 76 Pac. 345; *Houtz* v. *U. P.*, 35 Utah, 220, 99 Pac. 997; *Herriman Irr. Co.* v. *Keel*, 25 Utah, 96, 69 Pac. 719; *Jenkins* v. *Mammoth Min. Co.*, 24 Utah, 513, 68 Pac. 845; *First Nat. Bank* v. *Brown*, 20 Utah, 85, 57 Pac. 877; *France* v. *S. L. & O. Ry.*, 31 Utah, 302, 88 Pac. 1; *Firman* v. *Bateman*, 2 Utah, 268; *State* v. *Campbell*, 25 Utah, 342, 71 Pac. 529; *S. P. L. A. & S. L. R. R.* v. *Board of Education*, 35 Utah, 13, 99 Pac. 263; *Blue Creek L. & L. Co.* v. *Anderson*, 35 Utah, 61, 99 Pac. 444; *Morris* v. *Salt Lake City*, 35 Utah, 474, 101 Pac. 373; *Bowe* v. *Stilwell*, 39 Utah, 377, 117 Pac. 876; *Vance* v. *Heath*, 42 Utah, 148, 129 Pac. 365; *Connell* v. *O. S. L. R. R.*, 51 Utah, 26, 168 Pac. 337; *Mountain Lake M. Co.* v. *Midway Irr. Co.*, 47 Utah, 371, 154 Pac. 584; *Egelund* v. *Fayter*, 51 Utah, 579, 172 Pac. 313; *Holt* v. *Great Eastern Casualty Co.*, 53 Utah, 543, 173 Pac. 1168.

*Marioneaux & Beck* and *George G. Armstrong,* both of Salt Lake City, and *A. J. Evans* of Lehi, for appellant.

*Dana T. Smith* of Los Angeles, Cal., and *Fred C. Loofbourow* and *George J. Constantine,* both of Salt Lake City, for respondent.

THURMAN, J.

This is an action to recover the value of 10,000 shares of the capital stock of the defendant mining company which plaintiff alleges defendants wrongfully converted to their own use.

The complaint, in substance, alleges that plaintiff is the owner of said shares of stock by purchase from one R. E. Campbell on the 1st day of May, 1917, and that plaintiff at all times thereafter was entitled to have said shares issued to him by the defendant company; that plaintiff on the said first day of May, 1917, and thereafter on the twelfth day of the same month, demanded of said defendant company that it issue to him said shares of stock, which said company refused and ever since has refused to do; that on the fifteenth day of May, 1917, the individual defendants, who constituted the board of directors of the defendant company, by resolution directed the president and secretary of said company not to issue said shares of stock to plaintiff; that the defendants were then in possession of said stock, and by the resolution aforesaid converted the same to their own use, to plaintiff's damage in the sum of $3,000, the value of the said stock.

Defendants, for want of information sufficient to form a belief, deny that plaintiff is the owner of the stock, or that he purchased the same from Campbell, or that plaintiff is entitled to its possession, or that defendants converted the same, or that the stock is of the value of $3,000, or that plaintiff sustained damages in said sum or at all.

Further answering, defendants, in substance, allege that in 1915 all of the stockholders of defendant company entered into an agreement with one George E. Hemphill, whereby they

gave him the right to purchase 400,000 shares of the capital stock of said company, to be delivered to him from time to time at a certain specified price, and said contract was to continue in effect until the vendors should terminate the same upon fifteen days' previous notice in writing, which contract, it is alleged, is still in full force and effect; that at the time of said agreement one Fred Alkire was a stockholder in said company and was one of the parties to said contract; that at the time of making said contract said Alkire, said Hemphill, and others entered into an agreement that none of said stock should be sold, bargained, or otherwise disposed of before May 1, 1917, or as long as said contract with Hemphill should remain in force, and until ninety days thereafter; that at the time of said agreement said Alkire was the owner of 10,000 shares of the stock of said company, and that said stock is the same stock that is now claimed by the plaintiff. It is then alleged, in substance, that after the making of said agreement Alkire transferred his stock to said R. E. Campbell; but defendants, upon information and belief, allege that the same was transferred by Alkire for the use and benefit of himself. It is then alleged that their reason for refusing to issue said stock to plaintiff was solely upon the ground that said Alkire was the owner thereof and had entered into the aforesaid agreement.

The trial court found for the plaintiff against the defendant company and entered judgment for damages. The action as to the other defendants was dismissed. Defendant company appeals, and assigns as error the order of the court, overruling its motion for a nonsuit, the admission of evidence over plaintiff's objection, and insufficiency of the evidence to sustain the findings.

The evidence tends to show the following facts: That Fred Alkire was the original owner of the stock in question; that as evidence of ownership he held a certificate of the company therefor, certifying that he owned 10,000 shares of stock subject to a pool agreement that the said stock was not to be issued until May 1, 1917; that in May, 1916, Alkire transferred the stock to R. E. Campbell by indorsement and

delivery of the above certificate; that on May twenty-seventh
of the same year Campbell sent the certificate to the secretary
of the company for transfer, and in due time received one
made to himself, in substantially the same form as the one
received from Alkire. The exact form of the certificate is as
follows:

"Lehi, Utah, May 27, 1916.
"This is to certify that R. E. Campbell is the owner of ten
thousand shares of the capital stock of the Earl-Eagle Mining
Company, and that said stock, by pool agreement, is directed
not to be issued, sold, transferred, bartered, or otherwise dis-
posed of until May 1st, 1917.
"[Signed]          Earl-Eagle Mining Company,
"By W. E. Evans, Secretary."

Campbell kept the certificate in his possession until about
May 1, 1917, and then "turned it over" to the plaintiff, with
the following indorsement thereon:
"Earl-Eagle Mining Company,
"Lehi, Utah, May 1, 1917.
"Please issue my 10,000 shares of Earl-Eagle to the order of
George Baglin.
"[Signed]                    R. E. Campbell."

It also appears from the evidence that plaintiff is a mining
stockbroker of Salt Lake City; that Campbell was absent from
the state, and some time in the latter part of April, 1917,
wrote the plaintiff informing him that he had a pool cer-
tificate for 10,000 shares of Earl-Eagle stock; that the pool
expired May 1, 1917; that he desired to sell the stock, and
inquired if plaintiff could sell it for him after May first.
Plaintiff answered saying that he could. It further appears,
from the testimony of both plaintiff and Campbell, that
Campbell transferred the stock to plaintiff without considera-
tion and without intending it as a gift. The only considera-
tion moving Campbell to indorse the certificate and send it
to plaintiff, as shown by the evidence, seems to be that Camp-
bell desired to sell the stock and plaintiff assured him that he
could sell it. It also appears from the evidence that plaintiff
made formal demand upon the company that the stock be
issued to him, and that the company refused to issue it until
certain alleged conflicting claims were adjusted. Whether or

not the refusal to issue the stock, in view of the excuse offered, amounted in law to a conversion we need not now determine.

Certain evidence admitted in proof of the market value of the stock was vigorously contested by the defendants, and its admission as evidence assigned as error. These questions, as far as may be necessary, will receive consideration before concluding these remarks.

At the close of the evidence for the plaintiff, defendants moved for a nonsuit on the following grounds:

"That there is no proof that the complaining party, the plaintiff, was the actual owner or owner at all of the stock that he attempts to sue for; or that he was entitled to any rights or privileges of an incorporator; or that there is no proof that the corporation was in any way, or the individuals in any wise, liable for refusal to issue the stock at the time that the alleged conversion is complained of;

"That there is no evidence of a conversion in the record whatever made by the plaintiff, for the reason that there is no evidence whatever showing that the corporation or any of the defendants in any wise attempted to exercise any ownership or control as owners over the stock which the plaintiff alleges he made demand for; and there is no evidence that the corporation or these directors in any wise attempted to pass upon the ownership or the title to the stock; or that they ever denied that any particular person was the owner of the stock. There is no evidence of damages whatever in this case, under the rules of law, on which the court could find any damage accruing to the plaintiff in this action."

The trial court overruled the motion. Appellant took exception, and relies upon the exception as grounds of reversal.

The points raised by the exception are (1) that the evidence fails to establish plaintiff's ownership of the stock; (2) that there is no evidence of conversion, and (3) that there is no evidence of damage. If any one of these propositions is true, the court erred in denying the motion.

Appellant, under the first proposition, contends that plaintiff, in view of the evidence, was not the owner of the stock, and was therefore not the real party in interest.

Comp. Laws Utah 1917, section 6495, with certain exceptions which are immaterial here, provides that "every action must be prosecuted in the name of the real party in interest."

Relying upon this provision of the Code, appellant insists that plaintiff was not entitled to prosecute the action. We have heretofore alluded to the fact that the evidence showed the stock was transferred from Campbell to plaintiff without consideration; that he neither sold it to plaintiff nor gave it to him; that he delivered the certificate to plaintiff with the indorsement thereon authorizing defendant to issue the stock to the order of plaintiff; that Campbell's purpose in so doing was to authorize plaintiff to sell the stock for Campbell's benefit. No other conclusion can be drawn from the evidence, which is unimpeached and uncontradicted.

Plaintiff himself testified on cross-examination that his relation to the stock was that of broker. He referred to Campbell as his client, and also stated, in effect, that the damage sustained by the loss of an opportunity to sell the stock would be that of his client, and not his own, except his loss of a broker's commission.

Testimony as to whether or not there was a consideration for the assignment was admitted over respondent's objection. The position of respondent in respect to the question is that it is immaterial what the consideration was, or whether there was any consideration at all, inasmuch as the assignment conferred upon him the legal title to the stock.

This contention seems to be supported by the highest authority on code remedies. Pomeroy, Code Remedies, section 70, also remedies and Remedial Rights, section 132, state the proposition as follows:

"Analogous to the subject discussed in the proceeding paragraph is the question whether an assignee, to whom a thing in action has been transferred by an assignment which is absolute in its terms, so as to vest in him the entire legal title, but which, by means of a contemporaneous and collateral agreement, is, in fact, rendered conditional or partial, is the real party in interest. It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous, collateral agreement by virtue of which he is to receive a part only of the proceeds, 'and is to account to the assignor or other person for the residue, or even

is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional,' does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. The debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account."

If this is a sound exposition of the law, the question is, does it apply to the facts in the instant case? Here the certificate relied on as evidence of Campbell's title is absolute in form. The indorsement or assignment to plaintiff authorizes the issuance of the stock to the order of plaintiff. The assignment on its face is positive and unqualified. It is true there was a collateral agreement or understanding by which it was understood that plaintiff was to procure the issuance of the stock by the defendant company to himself or order, and dispose of it for the benefit of Campbell, less plaintiff's commission as broker. We have stated this collateral understanding in the broadest terms possible under the evidence, so as to give appellant the benefit of every fact that might lend support to its contention.

There can be no question as to the assignability of the stock. There can be no question as to the assignment itself, as far as the instrument relied on is concerned. It is true it does not purport to be given for a consideration, but that was a matter with which the defendants could have no possible concern. The defendants were completely protected as against any action upon the part of Campbell, and that was the only concern they could have so far as relates to the form of the assignment. This brings the case clearly within the principles enunciated by Pomeroy in the language above quoted and the cases cited in the note.

Assuming that the doctrine enunciated by Pomeroy is supported by the weight of judicial opinion, of which we have no doubt, we feel compelled to hold that the assignment in the case at bar conveyed the legal title to plaintiff, the collateral agreement or understanding of the    1, 2

parties to the contrary notwithstanding. Plaintiff, by the assignment became the real party in interest. He had a right to demand the issuance of the stock, and had the right to enforce the demand. He had every right that Campbell would have had if the assignment had not been made. As to his right to maintain the action, assuming that defendants refused to issue the stock without legal excuse, there can be no reasonable doubt. See specially *Castner* v. *Sumner*, 2 Minn. 44 (Gil. 32), cited in the above excerpt. In addition to the cases cited in the note the following are referred to, lending more or less support to the doctrine.: *Minn. Thresher Manufacturing Co.* v. *Heipler*, 49 Minn. 395, 52 N. W. 33; *Young* v. *Hudson*, 99 Mo. 102, 12 S. W. 632; *Chew* v. *Brumagen*, 13 Wall. 497, 20 L. Ed. 663; *Cottle* v. *Cole*, 20 Iowa, 481; *McPherson* v. *Weston*, 64 Cal. 275, 30 Pac. 842.

Respondent calls our attention to the following Utah cases: *Wines* v. *R. R. Co.*, 9 Utah, 228, 33 Pac. 1042; *Fritz* v. *Western Union T. Co.*, 25 Utah, 263, 71 Pac. 209; *Anderson* v. *Yosmite M. Co.*, 9 Utah, 420, 35 Pac. 502; *Culmer* v. *Clift*, 14 Utah, 286, 47 Pac. 85; *Mundt* v. *Comm. Bank*, 35 Utah, 90, 99 Pac. 454, 136 Am. St. Rep. 1023; also two California cases, *Tuller* v. *Arnold*, 98 Cal. 522, 33 Pac. 445, and *Dollar* v. *International Banking Corp.*, 13 Cal. App. 331, 109 Pac. 499.

In support of its contention that plaintiff is not the real party in interest, appellant cites and relies on the following: Bliss on Code Pleading (3d Ed.) section 45; 23 Am. & E. Enc. Law, 932; 15 Enc. Pl. & Pr. 710; *Williams* v. *Whitlock*, 14 Mo. 559; *Gruber* v. *Baker*, 20 Nev. 453, 23 Pac. 858, 9 L. R. A. 302; *Robbins* v. *Deverill*, 20 Wis. 148; *Chew* v. *Brumagen*, 13 Wall. 504, 20 L. Ed. 663; Black's Law Dictionary, 997; *Skews* v. *Dunn*, 3 Utah, 186, 2 Pac. 64; *Tripler* v. *Mt. Pleasant C. & S. B.*, 21 Utah, 313, 61 Pac. 25.

Appellant quotes an excerpt from Bliss on Code Pleading, supra, as follows:

"The real party in interest is the party who is to be benefited or injured by the judgment in the case. It will be observed that the statute provides the action must be prosecuted in the name

of the real party in interest, and, of course, if the defense can show that the plaintiff or plaintiffs are not the real parties in interest, the action must fail."

On referring to the volume cited, we find it is not a quotation from the text but from the note. The language is taken from the opinion of the court in *Eaton* v. *Alger*, 57 Barb. (N. Y.) 179. The language is very pointed, and certainly supports appellant's contention; but inasmuch as the case was afterwards overruled by the New York Court of Appeals (*Eaton* v. *Alger*, 47 N. Y. 345), and a contrary doctrine announced, reference to the case as authority for appellant was, to say the least, an unhappy selection. We have examined all of the authorities relied on by appellant on this particular question, and read them with more than ordinary care. We are nevertheless, of the opinion that it cannot be successfully urged that plaintiff in this case is not the real party in interest.

As to whether or not the conduct of the defendants in respect to the transaction constituted a conversion of the stock but little need be said. The refusal by a corporation to issue stock to one entitled thereto may or may not constitute conversion. It all depends upon the character of the excuse the corporation has for not issuing the stock. In *Coray* v. *Peery Irr. Co.*, 50 Utah, 70, 166 Pac. 672, a recent decision by this court in an action for refusing to issue a certificate of stock we held that the complaint of plaintiff, to which a demurrer had been sustained by the trial court, stated a good cause of action, and reversed the judgment on that ground. In *Mundt* v. *Bank*, supra, a case to compel the transfer of stock on presentation to the corporation of a duly indorsed certificate, this court sustained the action, and affirmed a judgment in favor of plaintiff.

The Mundt Case is of interest in another connection. The opinion defines the relative rights of the corporation and the owner of an indorsed certificate demanding transfer of the stock. It shows the duty and responsibility of a corporation in that regard, and also the duty and right of the corporation under certain circumstances to refuse to make the

transfer.  The law is there stated clearly and succinct-    **3, 4**
ly, and need not be repeated here.  What is there said
respecting the transfer of stock is equally applicable in a
case where a demand is made for the issuance of the stock, as
in the case at bar.  The same principle governs.  The law
being as there stated, the only question to determine in this
case is one of fact.  Did the defendants in refusing to issue the
stock act in good faith?  Were there sufficient facts to justify
their refusal?  The trial court evidently arrived at the con-
clusion that there was some evidence of a conversion.  We
are not prepared to say that the conclusion arrived at was
without foundation.

The third and last proposition relied on by appellant in
its motion for a nonsuit presents a more serious question.
Assuming there was a conversion of the stock, was there any
substantial evidence of damage?  Plaintiff himself was the
only witness who testified on that subject prior to a motion
for nonsuit.  He testified that he was a broker; had been for
several years on the Salt Lake Mining Exchange; that he had
transacted business in other cities through other brokers; that
the Earl-Eagle stock was listed on the Boston curb; that he
followed the market both in Salt Lake and Boston during the
month of May, 1917; that he knew what the market quota-
tions were during that month in Salt Lake City; that he also
knew what the quotations were on the Boston curb; that there
were no sales during May on the Salt Lake exchange; that he
attended the meeting of the stock exchange every day and
heard brokers offer bids for the stock; that the market quota-
tions as he knew them on the Salt Lake stock exchange were
from 12 to 15 cents bid, and the stock offered at 30; that that
condition continued for several months.

At this point several papers, marked plaintiff's Exhibits C
to H, inclusive, were identified by the witness.  They pur-
ported to be daily statements of stock transactions on the Bos-
ton curb from May 1 to May 7, 1917.  The exhibits were of-
fered in evidence of market value.  Defendants objected on
the grounds that they were incompetent, irrelevant, immate-
rial, and hearsay and had not been properly identified.  Ob-

jection overruled. The exhibits were read in evidence, purporting to show sales of Earl-Eagle stock at prices ranging from 24 to 30 cents per share. Plaintiff testified that he received these records in the ordinary course of business. He also testified as to market quotations on the Salt Lake Exchange; that he was the present custodian of the records of the exchange, but was not the official custodian. The records of transactions concerning Earl-Eagle stock during the month of May, 1917, were admitted over the defendants' objection that they were incompetent and immaterial. The records show that from one-quarter cent to one cent was bid, with an occasional offer to sell up to as high as thirty cents per share up to and including the eighteenth day of the month; that after that from five to twenty-five cents was occasionally bid, with offers to sell at prices ranging from thirty to sixty cents per share, but no sales were made during the month. On cross-examination plaintiff testified he thought the quotations from the Boston curb were sent out by the Boston Curb Association. He had no positive knowledge as to who they were sent out by. He never received any from the Boston curb, but only from the brokers. Plaintiff was of the opinion that Earl-Eagle stock on May 15, 1917, was worth from twenty to thirty cents per share. He arrived at that conclusion from Boston quotations. His answer was based on his knowledge obtained from the sheets of the Boston curb. He knew nothing of the Earle-Eagle Company's affairs or the merits of the property. The records from the Boston curb did not disclose who bought the stock. The witness admitted that for all he knew the seller and purchaser may have been the same person. He did not know whether or not such conduct was permitted on the Boston curb. Witness did not know what created the market there or whether or not it was a bona fide market. Sometimes a quarter of a cent was bid to make a quotation. He learned from the quotations, newspapers, and brokers that some sales had been made. Plaintiff testified he sold 5,000 shares of stock on the Boston curb at from fifteen to eighteen cents per share, but was unable to deliver, because he did not have the stock in his possession. He did not know who purchased the stock. The sale did not go through.

Substantially all the testimony of plaintiff as to the market value of the stock was objected to by defendants as being hearsay and incompetent, especially as to the records of transactions on the Boston curb. The opinion expressed by plaintiff as to the market value was objected to because it appeared to have been based entirely on the Boston quotations, of which plaintiff had no knowledge, except as they appeared in the exhibits. It must be admitted that the evidence was in the highest degree unsatisfactory. On the face of it it appeared to be the baldest kind of hearsay. Without further evidence as to its reliability, it is impossible to conceive upon what principle it should be permitted to determine the rights of litigants in a court of justice. The plaintiff did not know how the records were made up. He did not know whether or not the purported sales were bona fide. He did not even know that the buyer and seller were not the same person. In other words, the purported sales in Boston may have been the merest fiction for aught anything appears in the evidence of plaintiff.

In this connection an excerpt quoted by appellant from the case of *Vogt* v. *Cope,* 66 Cal. 31, 4 Pac. 915, is strikingly in point:

"There was nothing to show, or tending to show, how or in what manner the 'reports of sales' were made up; where the information they contained was obtained; or whether the quotations of prices made were derived from actual sales, or otherwise. In the absence of some such proof, the 'reports of sales' offered by the plaintiff were incompetent, and the court below was right in its ruling."

See, also, *Whelan* v. *Lynch,* 60 N. Y. 469; 19 Am. Rep. 202; *Fairley* v. *Smith,* 87 N. C. 367, 42 Am. Rep. 522; *Norton* v. *Willis,* 73 Me. 582; *G., H. & S. A. Ry. Co.* v *Hillman* (Tex. Civ. App.) 118 S. W. 158.

The evidence showed there were no sales whatever made on the Salt Lake Exchange. The fact that bids were made on different dates all the way from a quarter of a cent to twenty-five cents per share, and offers to sell on other dates from twenty to sixty cents per share, and no bids and offerings to sell on the same day, affords no evidence of market value

without further evidence of a bona fide market. *Norton* v. *Willis*, supra.

If we treat the motion for nonsuit as having been waived, and consider the evidence offered by the defendants, it can afford the plaintiff no consolation. Mr. Geo. E. Hemphill, selling agent of the Earl-Eagle Mining Company, had a contract with the company to sell 400,000 shares. He lived in Boston two years before coming to Salt Lake City. He testified he was engaged in the business of stock broker and mining, was acquainted with the company's mining property, and was president and manager of the company. When in Boston he was in touch with the Boston Exchange. The curb reports are authorized, but not guaranteed. They are made up by some authorized agent of sales during the day. The witness stated that he personally maintained the Boston market as to Earle-Eagle stock. *He directed the buying and selling price.* The stock on the market was treasury stock under his control. The personal stock was all pooled. The witness controlled the market in the way to create interest and publicity. It seems to have been a case of playing both ends against the middle, a species of "flim-flamming" and "thimble-rigging," to fleece the innocent public, especially the exceedingly numerous type of whom it is said one is "born every minute."

We search the record in vain for a line of competent substantial evidence that throws any light whatever upon the question of actual market value. Notwithstanding these manipulations to stimulate a market and keep it alive, the bottom dropped entirely out of the market, as far as the Earl-Eagle stock was concerned, as soon as the first assessment was levied. It is not our intention to discredit the stock or the property itself. It may have had more or less merit; but this court would be doing an injustice, both to the people of the commonwealth and to the stranger within our gates, if, when such a case is brought before us, we should refrain from expressing our views in unmistakable language.

We are of the opinion there was no competent evidence of

damage to the plaintiff, and that the motion for a nonsuit should have been sustained.

The judgment is reversed, at respondent's cost.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.

### ON APPLICATION FOR REHEARING.

THURMAN, J.

The court unhesitatingly concedes that the opinion handed down in this case is vulnerable to one or more of the objections urged against it by respondent in his application for rehearing.

In deciding the motion for a nonsuit, and determining that there was no evidence of damage, the court inadvertently overlooked the fact that respondent was at least **6, 7** entitled to nominal damages because of the unlawful conversion of the stock. The court was therefore in error in holding there was no evidence of damage. It is also contended by respondent that insufficiency of the evidence as to damage was not assigned as error, and therefore the court had no authority to review and determine that question. After a careful consideration of the record, we find the contention of respondent is correct, and we avail ourselves of this opportunity to make the correction. These matters were not argued before the court, and were therefore overlooked. The fact, however, that there was no assignment of error as to insufficiency of the evidence of damage was sufficiently stated by respondent in his brief to entitle it to be considered by the court.

In its reply to the application for a rehearing appellant makes formal application for leave to amend its assignment of errors as to insufficiency of the evidence, and presents a motion for that purpose. The motion is vigorously opposed by respondent on the grounds that the application was not made in time, and no excuse whatever is offered for the delay. The

court is of the opinion, under the circumstances attending this case, that the contention of respondent is unanswerable and should prevail. Even admitting that in certain cases the appellant may be permitted to file an assignment of errors after the time expires, or to amend an assignment already filed, upon seasonable application, where no prejudice inures to the opposing party, still, in our opinion, it would be an unwarranted extension of the privilege to permit an appellant to amend its assignment under circumstances such as exist in the present case. Here the appellant failed to assign as error the matter in controversy at the time he filed his assignment of errors. The respondent's brief called attention to the fact that there was no assignment of error as to that question, the case was argued and submitted, an opinion was rendered reversing the case partly on the ground that the evidence as to damage was insufficient, respondent applied for a rehearing, and again makes the point that there was no assignment of error as to one of the points upon which the case was decided. Then, for the first time, appellant asks for leave to amend. To allow the amendment applied for in this case without any excuse whatever for the delay in making the application would be in effect to hold that an assignment may be filed or amended at any time before the opinion is officially published. Such a holding would be a substantial abrogation of the rule requiring an assignment of errors to be filed, and incidentally would nullify the statute upon which the rule is founded. The consequences are altogether too serious. The application for leave to amend must be denied.

Both the parties have been exceedingly diligent in collating authorities in support of their respective contentions in respect to this question, and while we have not deemed it necessary to consider the case in the light of authority, because of the utter lack of any showing of diligence or excusable neglect, still, as the question is one of practice and of great importance, especially to the legal profession, we cite the principal authorities relied on by each of the parties.

Appellant cites the following cases: *United States* v. *Pena*

*et al.*, 175 U. S. 500, 20 Sup. Ct. 165, 44 L. Ed. 251; *Independent School Dist.* v. *Hall*, 106 U. S. 428, 1 Sup. Ct. 417, 27 L. Ed. 237; *City of Memphis et al.* v. *St. Louis & S. F. R. Co.*, 183 Fed. 529, 106 C. C. A. 75; *Bean* v. *Fairbanks et al.*, 46 Utah, 513, 151 Pac. 338; *Ogden Valley T. & R. Co.* v. *Lewis*, 41 Utah, 183, 125 Pac. 687; *Powell* v. *Nolan*, 27 Wash. 318, 67 Pac. 712, 68 Pac. 389; 2 Cyc. 1005, H, Amendments; 3 C. J. 1399; *Whaley* v. *Vidal*, 26 S. D. 300, 128 N. W. 331; *Hubbard* v. *Garner*, 115 Mich. 406, 73 N. W. 390, 69 Am. St. Rep. 580; *Hall* v. *C., R. I. & P. R. Co.*, 84 Iowa, 311, 51 N. W. 150; *Stanley* v. *Barringer et al.*, 74 Iowa, 34, 36 N. W. 877; *Hudson* v. *Smith*, 111 Iowa, 411, 82 N. W. 943; *Roberts* v. *Parker*, 117 Iowa, 389, 90 N. W. 744, 57 L. R. A. 764, 94 Am. St. Rep. 316; *Chenoweth* v. *Chenoweth* (Ind. App.) 115 N. E. 758; *Magee* v. *Paul* (Tex. Civ. App.) 159 S. W. 325.

In reply to these cases respondent cites the following: *Harrison* v. *Harker*, 44 Utah, 541, 142 Pac. 716; *Swanson* v. *Sims*, 51 Utah, 485, 170 Pac. 774; *Bristol, Plaintiff in Error,* v. *City of Chicago, Defendant in Error*, 21 Ill. 605; *Louisville R. R. Co.* v. *Smoot*, 135 Ind. 220, 33 N. E. 905, 34 N. E. 1002; *Baldwin* v. *Sutton et al.*, 148 Ind. 591, 47 N. E. 629, 1067; *Gladding* v. *Union R. R. Co.*, 25 R. I. 122, 54 Atl. 1060; *Hanover F. I. Co.* v. *Johnson*, 26 Ind. App. 122, 57 N. E. 277; *Marks* v. *Taylor*, 23 Utah, 152, 63 Pac. 897; *Genter* v. *Conglomerate Mng. Co.*, 23 Utah, 165, 64 Pac. 362; *Wasatch Irr. Co.* v. *Fulton*, 23 Utah, 466, 65 Pac. 205; *Van Pelt* v. *Park*, 18 Utah, 141, 55 Pac. 381; *O. S. L.* v. *Russell*, 27 Utah, 457, 76 Pac. 345; *Houtz* v. *U. P.*, 35 Utah, 220, 99 Pac. 997; *Herriman Irr. Co.* v. *Keel*, 25 Utah, 96, 69 Pac. 719; *Jenkins* v. *Mammoth Mining Co.*, 24 Utah, 513, 68 Pac. 845; *First National Bank* v. *Brown*, 20 Utah, 85, 57 Pac. 877; *France* v. *S. L. & O. Ry.*, 31 Utah, 302, 88 Pac. 1; *Firman* v. *Bateman*, 2 Utah, 268; *State* v. *Campbell*, 25 Utah, 342, 71 Pac. 529; *S. P. L. A. & S. L. R. R.* v. *Board of Education*, 35 Utah, 13, 99 Pac. 263; *Blue Creek L. & L. Co.* v. *Anderson*, 35 Utah, 61, 99 Pac. 444; *Morris* v. *Salt Lake City*, 35 Utah, 474, 101 Pac. 373; *Bowe* v. *Stilwell*, 39 Utah, 377, 117 Pac. 876; *Vance* v. *Heath*, 42 Utah, 148, 129 Pac. 365; *Connell* v. *O. S. L. R. R.*, 51 Utah,

26, 168 Pac. 337; *Mountain Lake M. Co.* v. *Midway Irr. Co.,* 47 Utah, 371, 154 Pac. 584; *Egelund* v. *Fayter,* 51 Utah, 579, 172 Pac. 313; *Holt* v. *Great Eastern Casualty Co.,* 53 Utah, 543, 173 Pac. 1168.

Notwithstanding the inadvertence of the court and the errors in the opinion above referred to, it does not necessarily follow that respondent is entitled to a rehearing of the cause. If the order reversing the judgment and remanding the cause was, nevertheless, right, the application for rehearing should be denied.

The opinion recites the fact that certain exhibits were admitted in evidence over appellant's objection as to their competency. The particular grounds of the objection and the alleged infirmities of the evidence are stated in the opinion, and need not be repeated here. The opinion cites many cases tending to show that such matter is incompetent as evidence. The court was of the opinion that the exhibits should not have been admitted. We held, in effect, that the admission of the documents was prejudicial error. Respondent referred us to no cases whatever in support of his contention prior to the opinion. In his application for rehearing he refers to many cases which bear more or less upon the question, some of which go far towards lending support to the contention that in certain cases price lists, trade journals, and even newspaper reports, may be admitted in evidence as tending to prove market value. We believe, however, that in every case cited the documents admitted or relied on were either assumed to be authoritative and properly identified or proven to be so to the satisfaction of the court. The contention here is that the authority of the exhibits admitted and their genuineness as reports of actual sales were not satisfactorily established by extrinsic evidence, and that in any event the matter was hearsay. We think this contention of appellant has not been overcome by anything offered by respondent. The fact that it appears in this very case that the purported sales and purchases, or offers to sell and purchase, were manipulated and controlled by the same person, and that such things could and do happen, tend to show the ex-

treme danger of admitting such matter haphazard without proper authentication as to its genuineness. The cases and authorities cited by respondent are as follows: Wigmore, Ev. section 716; 17 Cyc. 425; *St. Louis, etc., R. Co.* v. *Pearce,* 82 Ark. 353, 101 S. W. 760, 118 Am. St. Rep. 75, 12 Ann. Cas. 127; Wigmore, Ev. section 463, and section 719; *Central R. R.* v. *Skellie,* 86 Ga. 693, 12 S. E. 1017; *Hudson* v. *N. P.,* 92 Iowa, 231, 60 N. W. 608, 54 Am. St. Rep 550; *Morris* v. *Columbian I. W. Co.,* 76 Md. 354, 25 Atl. 417, 17 L. R. A. 851; *Whitney* v. *Thacher,* 117 Mass. 523; *Cleveland, etc.,* v. *Perkins,* 17 Mich. 296; *Hoxsie* v. *Empire Lumber Co.,* 41 Minn. 548, 43 N. W. 476; *Fountain* v. *Wabash R. R. Co.,* 114 Mo. App. 676, 90 S. W. 393; *Texas, etc.,* v. *Donovan,* 86 Tex. 378, 25 S. W. 10.

We doubt if any of the cases cited support the contention of respondent when applied to the facts of this particular case. If they do, we are not inclined to follow them as against the better reasoned cases cited in the opinion.

It follows, therefore, that the opinion heretofore rendered should be and is modified in accordance with the views herein expressed, and that the application for a rehearing should be denied.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.