E. W. GENTER, Respondent, v. THE CONGLOMER-
ATE MINING COMPANY, a Corporation, and G.
LAVAGNINO, Appellants.

EXCEPTIONS—PETITION IN ERROR—PARTICULARITY NECESSARY—SEC.
3284, R. S. 1898—ACTION FOR COMMISSION—PERSONAL LIABILITY—
AGENCY—RATIFICATION QUESTIONS FOR JURY—UNAUTHORIZED
AGENT—WHEN HIS CONTRACTS BIND BOTH HIS PRINCIPAL AND
HIM—POWERS OF AGENT—SCOPE—SPECIAL FINDINGS—DISCRETION
OF TRIAL COURT—FINDINGS BY JURY—WHEN FINAL.

1. EXCEPTIONS: PETITION IN ERROR: PARTICULARITY NECESSARY: SEC-
TION 3284, REVISED STATUTES 1898. Where neither the exception
taken nor the petition in error specifies the particulars in which the
evidence is insufficient to justify the verdict under section 3284, Re-
vised Statutes 1898, such question can not be reviewed.[1]

2. ACTION FOR COMMISSION: PERSONAL LIABILITY: AGENCY: RATIFICA-
TION QUESTIONS FOR JURY. In an action against two defendants for
a commission claimed to be due for services rendered, the questions
of personal liability, agency and ratification are questions of fact,
properly left to a jury under proper instructions.

3. UNAUTHORIZED AGENT: WHEN HIS CONTRACTS BIND BOTH PRINCIPAL
AND HIM. When an unauthorized agent makes a promise on behalf
of his principal which is afterwards ratified, and on his own behalf
also, both may be held; by ratifying an unauthorized act the prin-
cipal adopts it as his own and this adoption goes back to the incep-
tion and continues to its legitimate end, for a principal can not be
allowed to avail himself of the benefits of a contract and still repu-
diate its obligation.

4. POWERS OF AGENT: SCOPE. A power given to an agent to do certain
acts and transact certain business, carries with it the authority to do
whatever is usual or necessary to carry into effect the principal
power.

5. SPECIAL FINDINGS: DISCRETION OF TRIAL COURT. The submission of
special findings to a jury is within the discretion of the trial court,
and a refusal to submit special findings is not error.[2]

[1]Van Pelt v. Park, 18 Utah 141; Marks v. Taylor, 23 Utah 152.
[2]Webb v. R. R. Co., 7 Utah 17; Mangum v. Mng. Co., 15 Utah 554.

6. FINDINGS BY JURY: WHEN FINAL. The question of whether or not plaintiff received a commission from the buyers, on a sale consummated by him, and would therefore not be entitled to commission from defendants also, having been properly submitted to the jury, their findings are final.

Decided January 8, 1901.

Rehearing Denied February 4, 1901.

Appeal from the Third District Court Salt Lake County.— *Hon. A. N. Cherry,* Judge.

Action to recover a commission claimed by plaintiff for services rendered in finding a purchaser for certain mining ground. From a judgment for plaintiff defendants appealed.

AFFIRMED.

*A. R. Barnes, Esq.,* and *Messrs. Brown & Henderson* for appellant.

The doctrine of election between remedies is nowhere more strongly applied than where a party deals with the agent of an undisclosed principal; he is at liberty on discovering the principal to elect either to hold the agent or the principal, *but he can not hold both.* Pollock on Contracts (4 Ed.), p. 102; Addison on Contracts (8 Ed.), p. 46; Sessions v. Block et al., 40 Mo. App. 569; Mechem on Agency, sec. 698; Jones v. Ins. Co., 14 Conn. 501; Kingsley v. Davis, 104 Mass. 178-180; Silver v. Jordan, 136 Mass. 319; Priestly v. Fernie, 34 L. J. (Ex.) 172.

And this rule applies not only to the case where the principal at the time of the dealing with the agent was unknown or undiscovered, but applies equally where at that time the other party knew both the fact of the agency and the name of the principal. Mechem on Agency, sec. 698; Scheppler v. Dessar, 20 Mo. App. 575; In re Bateman, 28 N. Y. Supp. 37.

The point is further illustrated by the cases which hold that the creditor has an election to sue either the agent or the principal, but he can not, after he has sued the one to judgment maintain another action against the other, *even though the judgment does not result in the satisfaction of the debt.* Kingsley v. Davis, 104 Mass. 177; Tuthill v. Wilson, 90 N. Y. 423; Silver v. Jordan, 136 Mass. 319. See, also, Pollock on Contracts supra; Addison on Contracts, supra; Priestly v. Fernie, 34 L. J. (Ex.) 172; Am. and Eng. Ency. of Law (1 Ed.), vol. 1, p. 416.

The president of a corporation has no implied authority to act as its agent, but like other agents, he must derive his power from the board of directors or from the corporation. Wait v. Nashua Armory Ass'n, 14 L. R. A. (N. H.) 356; Bi. Spool Sewing Mach. Co. v. Mfg. Co., 153 Mass. 404; Cook on Stock and Stockholders (3 Ed.), vol. 2, sec. 716.

It is well established that presumptive notice to a principal by reason of knowledge of an agent or trustee *interested in concealing the fact* from his principal can not be imputed to the principal. Mechem on Agency, sec. 723; Story on Agency, sec. 210; Stone v. Hays, 3 Denio 579; National Bank v. Foot, 12 Utah 169; American Surety Co. v. Pauly, 170 U. S. 134.

The ratification of an unauthorized act of an agent, in order to be effectual and binding upon the principal, must have been made with a full knowledge of the material facts; and even though accepting benefits under the act the principal is not necessarily bound thereby. Moyle v. Congregational Society, 16 Utah 84; Swayne v. Ins. Co., 49 S. W. Rep. 518; Cook on Stock and Stockholders (3 Ed.), vol. 2, sec. 709.

The plaintiff was not entitled to recover and a nonsuit should have been granted for "It is a rule of public policy that an agent for the sale of property can not at the same time act

as the agent for the purchase thereof, or interest himself therein, and thus become entitled to compensation for both vendor and purchaser." Rice v. Davis, 136 Pa. St. 439; Rice v. Wood, 113 Mass. 133; Everhart v. Searle, 71 Pa. St. 256; Penna R. Co. v. Flannigan, 112 Pa. St. 558; Walker v. Osgood, 98 Mass. 348; Leathers v. Canfield, 45 L. R. A. (Mich.) 23; Byrd v. Hughes, 84 Ill. 174; Bell v. McConnell, 37 Ohio St. 397; Chatfield v. Simonson, 92 N. Y. 209; Mechem, secs. 67, 643, 644, 798.

The *contract ilself is void as against public policy* and good morals and both parties thereto being in *pari delicto* the law will leave them as it finds them. Rice v. Davis, 136 Pa. St. 439; Chapman v. Currie, 51 Mo. App. 40; Atlee v. Fink, 75 Mo. 100; Holcomb v. Weaver, 136 Mass. 265; Rice v. Wood, 113 Mass. 133.

"The knowledge acquired by the officers or agents of a corporation, *but while acting for themselves,* is not imputable to the corporation." Thompson on Corporations, vol. 4, sec. 5204; Johnston v. Shortridge, 93 Mo. 227.

"Neither is such knowledge imputable to the corporation when the agent acts for himself and *adversely* to the corporation." Thompson on Corporations, vol. 4, secs. 5205, 5209; Mechem on Agency, sec. 723.

There can be no estoppel in such a case. *The contract was void as contrary to public policy.* "The courts refuse to countenance such an employment not for the sake of the principal, but for the sake of the law." Chapman v. Currie, 51 Mo. App. 40.

It is error for the court to submit to the jury a fact or state of facts, which there is no evidence tending to prove. Thompson on Trials, vol. 2, sec. 2315, and cases cited; Am. and Eng. Ency. of Law (1 Ed.), vol. 11, p. 248; Clay Company v. Harvey, 9 Utah 497-507.

Messrs. *Stephens & Smith* for respondent.

The books are full of cases where an agency has arisen by estoppel, and the proof of such agencies must necessarily arise by proving the acts of the agent, and the fact that the principal has allowed an agent to exercise authority, and do certain things generally about its business is always evidence of the agent's authority to act.   See Herman on Estoppel, sec. 1077 ; Mechem on Agency, sec. 86 ; Neibles v. R. R. Co., 33 N. W. Rep. 332.

A party dealing with a corporation in good faith, and being unaware of any defect of authority on the part of those acting for the corporation, the company is bound by the contract if it is within its corporate powers.   Merchants Bank v. State Bank, 77 U. S. 10, 604 ; Crowley v. Mining Co., 55 Cal. 273 ; Fitzgerald Company v. Fitzgerald, 107 U. S. 98 ; McComb v. Association, 134 N. Y. 598 ; Mining Co. v. Bank, 2 Colo. 248 ; Nashua Co. v. Chandler Co., 44 N. E. 348 ; Winsor v. Bank, 18 Mo. App. 665 ; Bank v. Bank, 7 Atl. 318 ; Carrigan v. Co., 34 Pac. 148 ; Mining Co. v. Bank, 104 U. S. 192.

"By ratifying the unauthorized act, the principal assumes and adopts it as his own, and as has been seen this adoption extended to the whole of act, it goes back to its inception, and continues to its legitimate end.   It is the universal rule that as against the principal the ratification is retroactive and equivalent to a prior authority."  1 Am. Ency. of Law, (2 Ed.), p. 1213 of authorities there cited; R. R. Co. v. Middleton, 20 Ill. 629 ; Kiley v. Farsee, 57 Mo. 178 ; 42 Am. Rep. 397 ; 1 Am. Eng. Ency. of Law (2 Ed.), 997, and authorities there cited; Araphoe Company v. Stevens, 13 Colo. 534 ; Marine Bank v. Butler Company, 23 N. Y. S. R. 319 ; R. R. Co. v. Bastian, 15 Maryland, 494 ; William v. Gray, 72 Am. Dec. 757 ; Mechem on Agency, sec. 311 ;

R. R. Co. v. Bridge Company, 131 U. S. 371; Bank of Columbia v. Paterson, 11 U. S. 299.

All the evidence, and all the instructions requested by the appellants, based upon this alleged double employment, as being contrary to public policy should have been excluded from the jury, and the refusal to give the instructions requested on this point was not error, for the reason that the defendants failed to set up any fraud or misconduct on the part of the plaintiff in their answer, and the questions raised by the requests and upon this evidence were not within the issues before the court, and a failure to plead such a defense, waives the same. Lawson v. Thompson, 10 Utah, 462; Croco v. R. R. Co., 18 Utah, 311.

The Court of Appeals in Missouri, in Reese v. Garth, 36 Mo. App. 641, in an alleged double dealing by a real estate agent, held that the defendants must plead the fraud in order to avail themselves of it. Same ruling in Bonwell v. Auld, 29 N. Y. Supp. 15; Childs v. Ptomey, 43 Pac. 714; see Bliss Code Pl., sec. 352; Pom. Code Rem., sec. 660.

The great weight of authority, in fact, it is most unanimous that an agent for the sale, or exchange of property, no matter what the agent's duty, as to faithfulness and honesty may be to his principal, may act for the purchaser of the property, and receive a commission from both, providing both purchaser and seller have knowledge of the double relation and assent thereto.

See the following authorities: Acting for both, with knowledge, 42 N. E. 139 (Ill.) ; Cox v. Hann, 26 N. E. 822; Rupp v. Sampson, 82 Mass. 389; Harnickle v. Mining Co., 15 N. Y. St. Rep. 223; Bonwell v. Howes, 1 N. Y. Supp. 435; same as Auld, 27 N. Y. Supp. 936; affirmed, 29 N. Y. Supp. 15; Lansing v. Bliss, 33 N. Y. Supp. 310; Manders v. Craft, 32 Pac. 836; Childs v. Ptomey, 43 Pac. 714; Mon-

trose v. Eddy, 94 Mich. 100; 53 N. W. 916; Campbell v. Yager, 32 Neb. 266; 49 N. W. 181; Alexander v. University, 57 Ind. 466; Collins v. Fowler, 8 Mo. App. 588; Rowe v. Stevens, 53 N. Y. 621; Donohue v. Padden, 93 Wis. 20; Raney v. Donovan, 78 Mich. 318; Stewart v. Mathis, 32 Wis. 344; Hardy v. Sombraker, 31 Wis. 640.

### STATEMENT OF FACTS.

This action was brought by the plaintiff to recover a commission claimed to be due him for his services rendered to the defendants under an employment by them to procure a purchaser for the Conglomerate Mining Company's property. The plaintiff claims that defendant agreed to pay him a commission of $10,000 in case he found a purchaser for the said mining property for the sum of $550,000, and that he found such purchaser on the twenty-fourth day of February, 1899, in the person of C. A. Hight, and that such purchase was consummated and a conveyance made of the property at the price named.

The defendants answered separately, and each denied the employment of the plaintiff either jointly or separately, and also denied that plaintiff found a purchaser for the property. Defendant Lavagnino claimed that the plaintiff acted as a broker and agent for the purchasers of the property, and that plaintiff agreed to divide with him his commission so received which he refused to do, and claimed judgment for $25,000.

It appears, among others facts shown, that the Conglomerate Mining Company was a corporation of Colorado formed for the purpose of locating, buying, selling, leasing, bonding and operating gold, silver, copper, lead and iron mines, etc.; that it had one million shares, 965,000 shares of which were owned by a Belgian corporation, with its office in Paris, France; that the president thereof, Mr. Renove, owned ten

thousand shares, and the defendant Lavagnino owned fourteen thousand shares; that the defendant Lavagnino had proxies for the stockholders aggregating 965,000 shares, and was the president, director and manager of the mines in Utah; that the other two stockholders resided in Colorado and Utah, where the property was located.

The property sold for which a commission is asked is situated in Bingham, Utah, and consists of certain mining claims standing in the name of Lavagnino, and the Hamlin group of mines owned by a corporation the stock of which was purchased by Lavagnino for the Conglomerate Company, and the Old Telegraph property at Bingham owned by the defendant company; that since 1897, Lavagnino had been the manager of the defendant company, had personally attended to all of its business, and without any meetings, except about once in each year, at which meetings Lavagnino's acts were ratified, including the purchase of the Hamlin group; that he had the whole supervision of the mines and acted without direction of the board.

That Kimball, Dignowity and Franklin were brokers, doing business at Boston, and were acting for the purchasers of the mine in question; that they were allowed a commission for the purchase of the mines in question; that in January, 1899, Franklin, of said firm, requested plaintiff to get an option on the Old Telegraph mine, and stated to plaintiff that he must get his commission out of the sellers; that plaintiff thereafter saw Lavagnino and asked the price of the property; that Lavagnino informed him that the price was $500,000 but that he wanted it increased by $50,000, as he intended to charge a commission of $50,000 for himself; that Genter then asked Lavagnino how much his commission would be in case a sale was made, and Lavagnino informed him that it would be $10,000; that this was agreed to and that thereafter an option was given

for $550,000, and plaintiff informed Franklin that he had obtained the option as directed at the stated price; that a few days after this Lavagnino claimed that Genter was getting a commission from the purchasers, which plaintiff denied; Lavagnino insisted that he should try to get such commission from the purchasers; that plaintiff then wrote to Dignowity, one of the brokers, that he should have a commission from the purchasers; this was refused, and he also wrote Kimball, one of the brokers, that he was to have $10,000 commission from the sellers; that Mr. Hight, who represented the purchasers, came to Utah and examined the mine, and not being satisfied with the option obtained, requested a more definite writing from the company, than that obtained by the plaintiff, as to the conditions of the sale; that Lavagnino acquiesced in this and made a writing in which he states that Mr. Hight's request was received through Mr. Genter; that the Conglomerate Mining Company would sell its mining property to Mr. Hight for $550,000, and signed the letter individually; that Mr. Hight desired a letter signed by the company; that thereupon Mr. Lavagnino on the twenty-fourth day of February, 1900, gave a written contract to sell the mine for the sum of $550,000 to Coolidge and Clark, parties represented by Hight, and by Franklin and Dignowity and Kimball; this writing recited that the request came through the plaintiff, and was signed by the Conglomerate Mining Company, and by Lavagnino, as president; that the sale was afterwards perfected by the payment of the full price of $550,000, and two checks of $275,000 each, payable to the Conglomerate Mining Company, both indorsed by Lavagnino as president, were deposited with McCornick & Company, bankers, to the credit of the defendant company; that of this sum $521,000 was sent to the eastern stockholders in France, and the balance was retained by Lavagnino; that soon thereafter Lavagnino called the company's board of

directors together, including himself, and a motion was adopted ratifying all of the acts done by Lavagnino in making the sale of the property, and directing a conveyance by deed to the purchasers; that on the same day another meeting of the stockholders of the company was held, and the acts of the board of directors and Lavagnino in the premises were ratified; that at this meeting Lavagnino voted his own stock of 14,000 shares, stock held by the eastern company of 965,000 shares, being a total of 979,000 shares, and a few days later a proxy to vote 10,000 shares of Bougliese, another stockholder, was received by Lavagnino.

It was agreed between the plaintiff and Lavagnino, prior to the time when the purchasers sent their representative to examine the property, that if plaintiff received any commission it should be divided.  Plaintiff claims that no commission was received by him from the purchasers, or from the defendants, and defendants claim that he did receive a commission of $2,500 or more from the purchasers.

It also appears that Lavagnino made a personal promise by letter dated February 3, exhibit "A," to pay plaintiff a commission in case of a sale, and that he conveyed to the corporation a part of the property in question, after the sale was made to the purchasers.  Payment of the commission being refused this action was commenced to recover the same.  The case was tried with a jury who found a verdict for the plaintiff in the sum of $10,000.  From this judgment the defendants appeal.

After stating the facts, as above, MINER, J., delivered the opinion of the court.

1.  The appellants claim in argument that the evidence is insufficient to justify the verdict, but the exception taken or the petition in error does not specify the particulars in

which such evidence is insufficient under section 3284, and hence we can not review that question.    Van Pelt v. Park, 18 Utah 141, and cases cited.

2.   At the commencement of the trial and also after the plaintiff's testimony was closed, the defendants moved that the plaintiff elect whether to proceed against the defendant company or against Lavagnino, and claim that there was no joint liability or contract on the part of the appellants.    Appellants also except to the instructions of the court upon that subject, and the refusal of the court to give defendant's requests on the same subject, claiming that if any promise was made by the agent on behalf of his principal, but without authority, and whether authorized or not only one of the parties could be made liable in any event; that if the promise was unauthorized, then the agent only could be made liable, but if authorized, and the agency was disclosed, then the principal only was liable.

On the part of the respondent it is insisted that the action was brought against both defendants upon the promise of both that he should be paid the commission named if he found a purchaser at the price offered, and that the property was owned by both.

The court refused to grant a nonsuit or to direct plaintiff to elect which of the two parties he should proceed against. There was no error in this refusal on the part of the court.

Whether or not there was a promise by Lavagnino, personally, or by him as agent of the company, to pay the commission, and a subsequent ratification by the company of his acts; whether the respondent was acting as the agent of the purchasers and also of the sellers, or as a middleman, and whether or not he received a commission from the purchasers and agreed to divide it with Lavagnino were all questions of fact for the jury, under proper instructions.    The jury were instructed, among other things, in substance:    4.    The jury

are further instructed that if they find from a preponderance of the evidence that the defendant, Lavagnino, had power to negotiate for the sale of the property of the defendant corporation, such power carried with it as an incident the power to do all those things which are necessary, proper and reasonable to be done in order to effectuate the purpose for which it was created, and all proper means to accomplish the desired end, and all third persons dealing with such agent would have a right to presume that he had been invested with all such powers.

7. You are further instructed that a recovery can not be defeated on the ground that the plaintiff was to receive compensation for his services from the purchaser, if you believe that the plaintiff was only a middleman, and had no discretion but brought the parties together to make their own contract.

8. You are further charged that although you may believe from the evidence that Lavagnino was not authorized to act for the defendant company, but that he did pretend to act for it, and made a contract in its behalf, and that the corporation acted upon that contract, that would amount to a ratification and acquiescence in all acts of the agent which were proper and necessary to the consummation of the transaction.

9. While as a general rule ratification or acquiescence does not take place unless the principal has knowledge of the material fact, I charge you that in this case if you believe that the president, manager and director of the defendant company had knowledge of the facts in connection with the sale of the defendant's property, and as such he acted with the board of directors, or at a meeting of the stockholders, himself voting a majority of the stock, upon the matters to which his information relates, the strongest duty rests upon such person to communicate his information, and it should be presumed as against the corporation that he has done so.

10. You are further instructed that ratification of, or

acquiescence in the acts of a person professing to act for another is equivalent to an original authority.

16. If the jury find that the promise of Lavagnino to pay Genter $10,000 was that, that sum should be taken from a $50,000 to be paid to Lavagnino for himself, and if the jury find that no sum was to be paid to Lavagnino for himself, then Lavagnino is not liable to Genter.

17. If the jury find that Lavagnino promised to pay $10,000 out of $50,000 to be paid to him, then in that case the action must be against Lavagnino alone and plaintiff can not recover against the company.

20. If the jury find that Lavagnino entered into a contract with Genter relative to his commission by which he, Lavagnino himself became liable, then notice to him of that contract, or any liability, or condition or consequence of the same would not be notice to the company, no matter how large a proportion of the shares of stock he might have owned or represented, and if he was not authorized to make the contract in the first place, for the company, it could not be ratified by any subsequent act of his own.

The court further instructed the jury that if they found from the evidence that the defendants agreed to pay the plaintiff $10,000 in case he found a purchaser at $550,000, and plaintiff found such purchaser for the mine, and that defendants agreed upon the terms offered, then the plaintiff was entitled to recover against both defendants; or should they find that both defendants did not promise to pay plaintiff the stated commission, then the plaintiff was entitled to recover from the one who did make the promise.

The jury found the facts in favor of the plaintiff.

Under the facts and the instructions given the jury found that Lavagnino made a promise on behalf of the company, which

was ratified, and upon his own behalf. There was evidence tending to show that Lavagnino had a personal interest in effecting the sale of the Conglomerate property, and that interest was not shown to be hostile to that of the company. He expected to have a large commission from the company if the sale was made. A large shareholder, and manager of the foreign corporation had informed him that he should have a commission on sale of the property. Renove had cabled him and offered him $20,000; a large stockholder and officer had wired him to take $30,000, and that was the intention. A part of the property sold by the company to Hight was conveyed to it by Lavagnino after he had agreed to pay the commission to the plaintiff. Both Lavagnino and the company had an interest in the property sold, and in selling it. The whole purchase price was paid to the company and distributed to the stockholders by Lavagnino, except about $30,000, which he still retains. His acts as manager of the mine and in the conduct of the sale were expressly ratified by the board of directors and the stockholders at a meeting where Lavagnino held proxies and voted nearly the entire stock of the company.

Among other rights possessed by the company was the right to buy and sell mines. Mr. Lavagnino had held and dominated the policy of the company; bought and sold mines without direction or hindrance, and transacted the whole business of the company, and his acts were always ratified by his board of directors, and through him and his proxies by the stockholders. Lavagnino held 980,000 shares and the stockholders knew all about what occurred. When he signed the corporate name of the company to the contract of sale recognizing therein the agency of the plaintiff in the premises, he was acting for the company and within his powers, as such acts were subsequently ratified by the company which received the purchase price and directed a conveyance to the purchasers.

The question is whether an agent can bind his principal and also make an independent promise on his own behalf so as to bind himself.

The contention on the part of the appellants that when an agent only promises on behalf of his principal, and not on his own behalf, both can not be held, is doubtless correct, but when an authorized agent makes a promise on behalf of his principal which is afterwards ratified, and on his own behalf also, both may be held. By ratifying an unauthorized act the principal adopts it as his own. This adoption goes back to the inception and continues to its legitimate end. The principal can not be allowed to avail himself of the benefits of a contract and still repudiate its obligation. Mechem on Agency, sec. 167.

It is also a rule of law that a power given to an agent to do certain acts and transact certain business, carries with it the authority to do whatever is usual or necessary to carry into effect the principal power. 1 Am. and Eng. Ency. of Law (2 Ed.), 997.

The questions submitted to the jury were questions of fact, and they found under the instructions of the court that both defendants made the promise and held both liable.

Under all the circumstances we find no reversible error in the refusal of the court to compel an election, nor in refusing to grant the appellants' motion for nonsuit. Nor do we find that the court erred in refusing to give the instructions asked by the appellants. Neither do we find any error in the instructions given to the jury.

4. The appellants requested the court to submit special findings to the jury, which request was refused. This was within the discretion of the court, and the refusal to submit such findings was not error. Sec. 3163, R. S. 1898; Webb

v. Railroad Co., 7 Utah 17; Mangan v. Mining Co., 15 Utah
554; Olmstead v. Dauphin, 38 Pac. 505.

5.   It is also contended by the appellants that the plain-
tiff entered into a secret agreement by which he was to receive
compensation or commission from both buyer and seller, and
that therefore the agreement on the part of the defendant com-
pany to pay a commission was against public policy and void.
There was a conflict in the testimony on this subject.   The
plaintiff testified that no contract was made with the buyers
whereby he was to receive a commission from them, and that
in fact he never received any commission from them; that
through the advice of Lavagnino he wrote to obtain such com-
mission but the buyers, through their agents, refused to con-
tract for or allow him any commission.   The court instructed
the jury that if such contract was made by the plaintiff with
the buyers, and he acted as their agent in making the sale he
could not recover from the defendants.   The jury by their ver-
dict must have found a state of facts that negatives the conten-
tion of the appellants.

The question was properly submitted to the jury and their
findings are final.   The several instructions given sufficiently
covered the law of the case.

Upon the whole record we find no reversible error.   The
judgment of the district court is affirmed with costs.   *Bartch,*
*C. J.,* concurs.

BASKIN, J.—*(dissenting)*.—It clearly appears from the
evidence that Lavagnino, in making the sale in question, acted
in the capacity of agent of the defendant company; that he
was president and general manager of the company and owned
a large number of shares of stock of the company.   In relation
to the commission sought to be recovered by plaintiff, he tes-
tified, as follows: "I called upon him (Lavagnino) again

and we talked the matter over. After he stated the price, I asked him what my commission would be. He said, after figuring awhile, he marked on a pad in his desk, $10,000 and pushed it over to me. I said $10,000 ? He said 'Yes $10,000, your commission will be $10,000.' "

On cross-examination he said: "There was a talk about the commission the night of the twenty-ninth (January) after he named the price of the property, and it was settled that I should wire them (the Boston parties) the price. I asked him what there was in it for me. Mr. Lavagnino was sitting at his desk with a pencil and scratch pad. He figured a while, put down the figures ten thousand dollars, and pushed it over to me. He did not say that out of the $50,000 commission he would pay me $10,000. I had a conversation with Lavagnino about the fifteenth of March, when the first payment was made. I spoke to him about the commission due me from the company; I don't remember the words, I remember I stated he was about to receive the half of the purchase price of the property, $275,-000, that was to be paid in that day, and I asked him if he would pay me the commission that day, he stood me off by saying he wasn't ready to pay it; he says, well, I will pay you, but I want to see Franklin; it ended right there, and I attached the money in the bank."

Lavagnino, on February 3, 1899, sent a letter to the plaintiff in which he said: "From what you intimated your eastern friends seem to me already more acquainted with the property than yourself, and ought to have no difficulty in approaching me directly. You will have only to see that they do so under your auspices as your friends and that they purchase the property at the figure mentioned, and I will undertake to pay you the commission mentioned."

The defendant, Lavagnino, stated, in his testimony: "I said to him (the plaintiff) I am going to figure on a price to

be paid to the company. I want you to know that over and above that price I will fix a sum to be paid by your friend or your party to me, and I figured up a price there. Finally I wrote on a piece of paper, called his attention. I had written it down—$500,000 to be paid to the company, after that I made 'plus $50,000.'

Q. Mr. Stephens: Have you that memorandum? A. Yes sir, while I was figuring that commission, Mr. Genter said we will make it large enough to include something for me. I did not answer that question, but after I showed him the paper he said, 'Well, where do I come in?' Opposite the fifty thousand dollars I made a mark like that, and said $40,000 Lavagnino, then I marked $10,000. I didn't put the name Genter, but it was understood it was for Genter."

The foregoing is all the testimony in support of an agreement to pay the plaintiff the commission claimed by him.

While it is clear from the evidence that Lavagnino agreed to pay the plaintiff a commission it is equally clear to me that the evidence fails to show any joint agreement by the defendant.

It is elementary that the construction of a contract, whether written or oral, or partly written and partly oral, when the terms are not disputed, or are established beyond doubt, and are not ambiguous, is a matter for the court and not the jury.

In the case at bar, if all that the plaintiff stated be taken as true, a joint obligation is not shown, and therefore the judgment is erroneous.

I can not concur in the opinion of my associates.