BERG v. OTIS ELEVATOR CO. et al.

No. 3991.    Decided September 15, 1924.    Rehearing Denied December 26, 1924.    (231 Pac. 832.)

1. NEGLIGENCE—INDEPENDENT CONTRACTOR'S LIABILITY MEASURED BY OBLIGATIONS AS SUCH. Where, in installing elevator cables, defendant acted in capacity of an independent contractor, its liability was to be measured by obligations of an independent contractor so far as one suing for injuries when elevator fell was concerned.

2. NEGLIGENCE—INDEPENDENT CONTRACTOR NOT LIABLE FOR INJURIES TO THIRD PERSONS AFTER ACCEPTANCE OF WORK. Independent contractor is not liable for injuries to third persons, with whom he has no contractual relations, occurring after he has completed his work and turned it over to owner or person with whom he has contracted, and same has been accepted, even though injury to third person resulted from his negligence in carrying out contract.

3. NEGLIGENCE—INDEPENDENT CONTRACTOR LIABLE WHEN WORK ACCEPTED IS IMMINENTLY DANGEROUS TO THIRD PERSONS. Independent contractor continues liable where the work is turned over by him to owner in a manner so negligently defective as to be imminently dangerous to third persons.

4. NEGLIGENCE—WHEN INDEPENDENT CONTRACTOR LIABLE FOR INJURIES TO THIRD PERSONS AFTER ACCEPTANCE OF WORK, STATED. When an independent contractor's work on an instrumentality makes it imminently dangerous to those he knew would use it, he remains liable, even after its acceptance by contractee, to third parties injured as result of his negligence, if he knew or

should have known the dangerous condition by him created, and contractee had no knowledge thereof, and could not by reasonable inspection have discovered it.

5. NEGLIGENCE—INDEPENDENT CONTRACTOR GUILTY OF MORE THAN MERE NEGLIGENCE LIABLE AFTER ACCEPTANCE OF WORK. To render an independent contractor liable for damages after work has been accepted by contractee, contractor must be guilty of something more than mere negligence.

6. NEGLIGENCE—"POOR JOB" WILL NOT RENDER INDEPENDENT CONTRACTOR LIABLE FOR INJURIES TO THIRD PERSONS AFTER ACCEPTANCE OF WORK. "Poor job" might not and would not of itself render independent contractor liable for injuries to third persons after work was accepted by contractee, but a "good job" would be a good defense.

7. NEGLIGENCE—CONTRACTOR LIABLE TO THIRD PERSONS IF HE KNEW OF IMMINENT DANGER. If contractor does defective work which renders instrumentality dangerous, he becomes liable in damages to one injured if he knew, or should have known, that instrumentality was delivered to contractee in condition of imminent danger and which reasonable inspection would not have revealed.

8. TRIAL—ERROR NOT PREDICATED ON REFUSAL OF INSTRUCTIONS CONTAINING ERRONEOUS STATEMENTS OF LAW OR FACT. Error cannot be predicated on refusal to give requested instructions, if request contains any erroneous statement of either law or fact.

9. NEGLIGENCE—INDEPENDENT CONTRACTOR'S LIABILITY FOR INJURIES BY FALLING ELEVATOR INSTALLED HELD FOR JURY. In action for injuries sustained by hotel guest when elevator in which she was riding fell, whether independent contractor installing elevator cables was liable held for jury.

10. TRIAL—JURY IS TO DECIDE TRUTH OF CONFLICTING TESTIMONY. Where testimony is conflicting it is for jury to decide what the truth is.

11. TRIAL—SPECIAL INTERROGATORY RENDERED OBJECTIONABLE BY REFERENCE TO TESTIMONY OF PARTICULAR WITNESS. Special interrogatory submitted, in action by hotel guest to recover for injuries when elevator in which she was riding fell, whether hotel company was notified by contractor installing elevator cables soon after repair work had been done, that safety device on such elevator could not be repaired so as to be put in efficient

condition, "as testified to by witness" named, was rendered objectionable by the quoted words.

12. TRIAL—PURPOSE OF SPECIAL INTERROGATORIES, STATED. Purpose of special interrogatories is to test correctness of general verdict by ascertaining facts on which it is based, and each question should call for a direct answer in reference to a single, material, as well as ultimate fact.

13. APPEAL AND ERROR—GENERAL VERDICT FOR PLAINTIFF PRESUMED TO BE IN HIS FAVOR ON ALL MATERIAL ISSUES. General verdict in favor of plaintiff is presumed to be in his favor on all material issues.

14. APPEAL AND ERROR—TRIAL—SUBMISSION OF SPECIAL QUESTIONS TO JURY LARGELY WITHIN TRIAL COURT'S DISCRETION. It is largely within trial court's discretion whether special questions shall be submitted to jury, and unless a clear abuse thereof is shown, refusal to submit such interrogatories is not reversible on appeal.[1]

15. TRIAL—DISCRETION HELD NOT ABUSED BY FAILURE TO SUBMIT SPECIAL INTERROGATORIES. In action for injuries sustained by hotel guest when elevator in which she was riding fell, trial court *held* not to have abused its discretion under Comp. Laws 1917, § 6821, in refusing to submit questions relating to operation or condition of safety device on elevator.

16. APPEAL AND ERROR—APPELLATE COURT CANNOT INTERFERE WITH VERDICT, WHERE NOT EXCESSIVE AS MATTER OF LAW OR BASED ON PREJUDICE. Appellate Court has no right to interfere with discretion of trial judge in overruling motion for new trial and in refusing to change amount of verdict, unless it can say from a consideration of the evidence that verdict is excessive as matter of law, or that in view of injuries suffered by plaintiff it was based on prejudice and passion.[2]

On Application for Rehearing.

17. APPEAL AND ERROR—ASSIGNMENT DEEMED ABANDONED WHERE IGNORED IN BRIEFS OF PARTY ASSIGNING IT. Assignment of error, which is ignored in briefs of party assigning it, is deemed abandoned and waived and is not thereafter subject to resurrection.

18. TRIAL—INSTRUCTION PREDICATING DEFENDANT'S LIABILITY ON KNOWLEDGE THAT ELEVATOR WAS IMMINENTLY DANGEROUS HELD PROPERLY REFUSED AS BEING INCOMPLETE. In hotel guest's action for injuries sustained when elevator in which she was riding

fell, instruction that contractor installing elevator cables would not be liable unless it knowingly rendered elevator imminently dangerous was properly refused as being incomplete.

19. APPEAL AND ERROR—FAILURE TO GIVE INSTRUCTION WAIVED WHERE NOT ARGUED OR NOTICED UNTIL REHEARING. Failure to give requested instruction which counsel did not regard of sufficient importance for argument and to which no attention was called until they attempted to raise another and new issue in argument for a rehearing, *held* waived.

20. TRIAL—ERROR CANNOT BE PREDICATED ON REFUSAL TO GIVE INCOMPLETE INSTRUCTION. Error cannot be predicated on refusal to give an incomplete instruction, which, if given, would have been misleading.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Action by Mrs. Gertrude Berg against the Otis Elevator Company and others. Judgment for plaintiff, and named defendant appeals.

AFFIRMED.

*Edward C. Stone,* of Boston, Mass., and *Richards & Richards* and *Richards & Mitchell,* all of Salt Lake City, for appellant.

*Willard Hanson* and A. H. *Hougaard,* both of Salt Lake City, for respondent.

· *C. A. Gillette* and *Dey, Hoppaugh & Mark,* all of Salt Lake City, for defendant Bonneville Hotel Co.

[1] *Bunce* v. *Pace,* 61 Utah, 74, 210 P. 984; *Lindsay L. & L. Co.* v. *Smart L. & L. Co.,* 43 Utah, 554, 137 P. 837; *Genter* v. *Mining Co.,* 23 Utah, 165, 64 P. 362; *Mangum* v. *Mining Co.,* 15 Utah, 534, 50 P. 834.

[2] *McAfee* v. *Ogden U. R. & D. Co.,* 62 Utah, 115, 218 P. 98.

(1-7) 29 Cyc. 484; (8) 38 Cyc. p. 1707; (9) 29 Cyc. p. 639; (10) 38 Cyc. p. 1537; (11) 38 Cyc. p. 1916; (12) 38 Cyc. pp. 1909, 1916; (13) 4 C. J. p. 772, 38 Cyc. p. 1869; (14) 38 Cyc. p. 828;

(14, 15) 4 C. J. p. 828; (16) 4 C. J. pp. 872, 873; (17, 19) 3 C. J. p. 1410, 4 C. J. p. 1068; (18, 20) 38 Cyc. pp. 1602, 1633; (19) 4 C. J. p. 629.

WEBER, C. J.

The Otis Elevator Company, one of the defendants, appeals from a judgment rendered against it and the Bonneville Hotel Company. The Bonneville company has not appealed. The action was brought against the above-named defendants and William N. Clark, the case against the latter having been dismissed on plaintiff's motion during the trial.

The complaint charges that the Otis Elevator Company is an Illinois corporation engaged in installing and maintaining and repairing elevators; that the Bonneville Hotel Company is a Utah corporation and owns and operates the Newhouse Hotel in Salt Lake City, Utah, wherein there are three separate passenger elevators operated by electricity; that in September, 1920, the appellant was employed by the Bonneville Hotel Company to install on its No. 2 passenger elevator two hoisting cables, and that said work was done by William N. Clark, an employee of appellant. The proper method of attaching the cables to certain cones is fully described, and it is alleged that the appellant knew the elevator was used for carrying and conveying guests of said hotel and for practically no other purpose. It is further alleged that it was the duty of the defendants, in attaching said cables to the said cones, to properly bend the wires at the ends of the cables where they were attached to the cones, and to insert proper and sufficient babbitt or other metal for the purpose of holding the cables in the cones, and that unless the cones and cables were properly attached to each other there was great and imminent danger of the cables parting in the cones and pulling loose therefrom, thus causing the elevator to drop, all of which the defendants knew. It is further alleged that defendant failed to use sufficient babbitt or other metal for the purpose of attaching the cables to the cones, and improperly bent the wires of said cables where they were attached to the cones, so that the wires and cables were greatly

weakened and damaged and broken, so that there was im-
minent danger of said cables parting and breaking in said
cones and pulling loose therefrom, and that the defendant
knew the careless and negligent manner of attaching, and
knew that there was imminent danger of the cables parting
and breaking in the cones and separating, and that the eleva-
tor would in its usual and ordinary operation be likely to
fall and injure guests of the hotel. It is then alleged that
on March 21, 1922, plaintiff was a guest of the Newhouse
Hotel and was a passenger on No. 2 elevator, and that while
such passenger the hoisting cables, by reason of the negligent
installation of the cables by the Otis Elevator Company,
broke in the said cones, and the elevator carrying plaintiff
and other passengers dropped from a point near the mezza-
nine or entresol floor to the basement, a distance of about
35 feet, and plaintiff was seriously injured.

In its separate answer, the Otis Elevator Company (herein-
after referred to as appellant) admits that it installed two
hoisting cables on No. 2 passenger elevator in September, 1920,
but denies that it was ever employed to keep, maintain, and
repair said elevators in said Newhouse Hotel; admits that the
No. 2 passenger elevator fell March 21, 1922, but denies that
there was great or grave or imminent or any danger of said
cables parting or breaking in said cones or pulling loose
therefrom, and denies that the breaking of said cables or
the falling of the elevator was due to any negligence on the
part of appellant. Appellant further alleged that the eleva-
tor would not have fallen so as to cause injury to the plaintiff
had it been properly equipped with proper safety devices.

On behalf of respondent, evidence was adduced tending to
prove that the cables had been improperly attached; that the
work was done by William N. Clark, an employee of the
elevator company, who knew that his work had not been
properly done; that the defective installation made the ele-
vator liable to fall at any time, and that the cables parted
at the time of the accident because of the defective and negli-
gent manner of attaching them to the cones; that the eleva-
tor, when falling, reached a speed of about 350 feet per

minute, and that the safety devices would not operate until after a speed of about 490 feet per minute had been attained by the falling elevator; that the defective installation was not discoverable by inspection and was unknown to the defendant hotel company; that the elevator upon which the cables were installed was a Von Emon elevator and no part was of defendant elevator company's make; that when installed the cables and elevator were delivered to and accepted by the hotel company and operated for 18 months thereafter and until the date of the accident, March 21, 1922. Testimony was adduced tending to support the material allegations of the complaint and sufficient to make a prima facie case in favor of plaintiff.

The undisputed evidence establishes that in its work of installing the elevator cables the appellant acted in the capacity of an independent contractor. As argued by counsel for appellant, its liability is therefore to be measured by the obligations of an independent contractor so far as the respondent is concerned. The elevator company being an independent contractor, counsel invoke the well-established rule of law which they state to be:

"An independent contractor is not liable for injuries to third persons, with whom he has no contractual relations, occurring after he has completed his work and turned it over to the owner or person with whom he has contracted, and the same has been accepted by the owner or person with whom the contractor made his contract, even though the injury to the third person resulted from negligence of the independent contractor in carrying out his contract."

The above rule finds support in all the cases cited by counsel, nearly 100 of them, and is approved by all the textwriters. Moll, Ind. Contractors, § 177, p. 291; Wharton, Neg. 368; 14 R. C. L. § 42, p. 107. One of the reasons for the rule is stated in the leading English case, *Winterbottom* v. *Wright*, 10 M. & W. 109:

"If we were to hold that the plaintiff could sue in such case there is no point at which actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract. If we go one step beyond that there is no reason why we should not go fifty."

What is stated to be a better reason, in *Casey* v. *Bridge Co.*, 114 Mo. App. 47, 89 S. W. 330, is that ordinarily in such cases there is found a break in the causal connection between the contractor's negligence and the injury—

"It is the intervening negligence of the proprietor that is the proximate cause and not the original negligence of the contractor. By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract he is presumed to have made a reasonably careful inspection thereof and to know of its defects, and if he takes it in the defective condition he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous con lition the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the contractor or from his neglect to repair."

As well settled and as potent as the rule itself are certain exceptions, one of which is that the contractor continues liable where the work is turned over by him in a manner so negligently defective as to be imminently dangerous to third persons. Moll, Ind. Contractors, § 228, p. 348; 14 R. C. L. § 42, p. 107; 29 Cyc. 484; 16 A. & E. Ency. L. 209; Wharton, Neg. § 438; 1 Thompson, Neg. § 686.

The decided weight of authority supports the proposition that when an independent contractor has done work on an instrumentality and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if the contractor knew or in view of the peculiar circumstances of the case should have known the dangerous condition by him created, and the contractee had no knowledge of the dangerous condition or defect which was so concealed that reasonable inspection by the contractee would not have discovered it. After citing cases sustaining the exception to

the general rule, it is said in *Casey* v. *Bridge Co.*, supra, ·at page 64 (89 S. W. 335) :

"Applying the principles upon which these exceptions are based that bear upon the case in hand, we are of the opinion that the defendant should not be excused from liability to the plaintiff, even under the supposition that the bridge was accepted by the commissioners. The facts, which the evidence tends to establish, that the structure was so defective as to be essentially and imminently dangerous to the safety of others; that the defects were so hidden or concealed that a reasonably careful inspection would not have disclosed them, and the danger resulting from them, and that these things were known to the defendant but not to the commissioners, left the liability of the defendant where it would have been had there been no acceptance. The flagrant character of the negligence and its potentiality, coupled with its concealment, amounted to a deception practiced upon the commissioners. There is no righteous principle upon which the obligation imposed by duty, upon the contractor, may be cast off under circumstances such as these."

Other cases are collated by the annotators in 26 L. R. A. 504, 32 L. R. A. (N. S.) 972; *Wood* v. *Sloan*, 20 N. M. 127, 148 P. 507, L. R. A. 1915E, 766, and annotations. See, also, *O'Brien* v. *Am. Bridge Co.*, 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. Rep. 503; *Bryson* v. *Hines* (C. C. A.) 268 F. 290, 11 A. L. R. 1438.

To render an independent contractor liable for damages after the work has been accepted by the contractee, the contractor must be guilty of something more than mere negligence. In addition to negligence, the contractor must have knowledge of the imminence of danger. *Wood* v. *Sloan*, supra. This doctrine is recognized in respondent's complaint, in which it is alleged, after the acts of alleged negligence were detailed:

"And plaintiff alleges that the said defendant then and there well knew the careless and negligent manner in which the said cables were attached to the said cones, and then, and there well knew that there was great and grave and imminent danger of the said cables breaking in said cones and separating therefrom, and· then and there well knew that the said elevator was to and would be used by the guests of said hotel aforesaid, and then and there well knew that by reason of the manner in which said cables were attached to said cones as aforesaid, that said elevators would, in

the usual and ordinary operation of the same, be likely to fall, and that the guests of said hotel using the said elevators would be seriously injured."

The above allegations were repeated in substance by the court in its statement to the jury of the issues submitted, but, though requested no other instruction was given relating to the knowledge of appellant of the imminence of the danger. It is now contended that it was error not to give further instructions on this subject. No doubt, the court would not have refused the requests had they not contained erroneous legal propositions. Thus it is stated in one of the requests:

"It makes no difference what you may believe as to the work being a good job or a poor job."

While a "poor job" might not and would not of itself have rendered the appellant liable, a "good job" would certainly have presented a good defense.

In another request, which the court refused, this language is used:

"The Otis Elevator Company is only liable if its negligence was so gross and reckless as would cause reasonable and prudent men to say that it knowingly and intentionally did the work in such a manner as to render the elevator liable to fall and injure some one at any moment after the cables were installed."

According to the above, a contractor would not be liable in damages unless he also committed a crime. Some courts seem to go to that extreme. The sensible and logical position seems to us to be that if the contractor does defective work which renders the instrumentality dangerous, he becomes liable in damages to one injured if he knew, or under the particular circumstances should have known, that the instrumentality was delivered to the contractee in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger.

As we view the law, the requested instructions contained erroneous propositions of law. In this jurisdiction it is well established that error cannot be predicated upon the refusal to give a requested instruction if the re-

quest contains any erroneous statement of either law or fact.

With the statement of the issues by the court and other instructions given, which as a whole constituted a clear and concise statement of the law applicable to the facts, we are convinced that no reversible error was committed by the court in the instructions given. Nor was error committed in the refusal to give requested instructions. '

Appellant's counsel review and discuss the evidence with much detail, claiming that the evidence conclusively shows that the cables were properly installed; that the proximate cause of plaintiff's injury was the failure of the hotel company to equip and maintain on the elevator efficient safety devices in good working condition and to properly operate, inspect, and repair the elevator; and that unusual and unequal strains, shocks, and stresses from the operation of the elevator caused the cables to crystallize and break.

Without reviewing the evidence in detail, it is sufficient to say that respondent's testimony tended to prove that the installation of the cables was defective, and done in such a manner as to make the elevator imminently dangerous to the hotel guests, who the appellant knew would use it; that appellant knew of the defective and dangerous condition of the cables; that the hotel company had no knowledge of the defective condition; that the defective work done by appellant was so concealed it could not have been **9** discovered by reasonable inspection; and that the cables parted and the elevator fell as the result of the defective and improper installation of the cables. These ultimate facts brought the case within the rule of liability and required the submittal of the issues to the jury.

On behalf of appellant, evidence was presented contradicting all that which had been produced by the respondent; evidence was adduced by appellant to the effect that the cables were properly installed; evidence was produced tending to prove that the elevator had been improperly and recklessly operated from the time of the installation of the cables till the time of the accident, a period of eighteen

months; appellant produced experts who testified that the
use to which the cables and elevator attachments were sub-
jected had caused crystallization of the cables at the point
where they parted and that this crystallization was the
cause of the breaking or parting of the cables; testimony
was produced tending to show that the hotel company failed
to install and maintain efficient safety devices and to prop-
erly inspect and repair the same. None of this testimony
was undisputed. On every issue there was testimony pro
and con. Thus respondent introduced expert testimony in
contradiction to that produced by appellant on the question
of crystallization, as to the manner of operating the eleva-
tor, as to the safety devices, and that if they were inef-
fective it was due to the negligence of appellant in repair-
ing them. Throughout the whole of a prolonged trial,
the testimony was conflicting. It was for the jury to
decide what the truth was, and therefore the trial
court did not err in submitting the issues to the jury.

Appellant requested the court to submit to the jury the
following special interrogations:

"Question No. 1, Was the elevator at the time of the accident
falling at a speed sufficient to enable a standard efficient safety
device or appliance in good working condition to operate and stop
the car before it reached the bumpers?

"Question No. 2, Would the injury to the plaintiff have been pre-
vented if the safety appliance or device on said elevator had oper-
ated at the time of the accident?

"Question No. 3, Was the defendant Bonneville Hotel Company
notified by the defendant Otis Elevator Company, soon after the
repair work had been done in June, 1921, upon the safety appliance
or device on said elevator, as testified by the witness, Thaxton,
that the said safety appliance or device on said elevator could not
be repaired so as to put safety appliance device in efficient working
condition?

"Question No. 4, Did the defendant Bonneville Hotel Company
know, or could it by proper inspection between June, 1921, and
the date of the accident have discovered, the state or condition of
repair of said safety device or appliance?"

No objections were interposed to the interrogations which
we assume were served upon opposing counsel in due
time. The words "as testified by the witness Thax-

ton,'' in the third interrogatory, were clearly objectionable.

The purpose of special interrogatories is to test the correctness of the general verdict by ascertaining the facts upon which it is based, and each question should call for a direct answer in reference to a single, material, as well as ultimate fact. 23 Std. Enc. Pr. 981, 987.

Under the facts and circumstances of this case, its many and varied issues, appellant's requested special interrogatories might well have been submitted to the jury. A general verdict in favor of a plaintiff is presumed to be in his favor on all material issues. But what does this verdict embrace? Does it mean that the installation of the cables was so improperly and negligently done as to make the elevator imminently dangerous, that the contractor knew or should have known of this condition, a concealed condition of which the hotel company had no knowledge, and a condition that reasonable and proper inspection would not have disclosed, and that the elevator had not in falling attained sufficient speed to enable the safety device to operate—did the jury stop there, estimate the damages, and agree upon the verdict in plaintiff's favor? Or, does the verdict mean that the elevator attained sufficient speed to put the safety devices in operation and that they did not stop the car in its descent because of improper repair work done on the safety devices by appellant? What did the jury think of appellant's theory of crystallization which had substantial evidence in its support?

In the opinion of the writer, proper interrogatories and answers would certainly have been illuminating. In support of the trial court's refusal to submit special interrogatories, respondent relies upon *Lindsay L. & B. Co.* v. *Smart L. & L. Co.*, 43 Utah, 554, 137 P. 837; *Genter* v. *Mining Co.*, 23 Utah, 165, 64 P. 362; *Mangum* v. *Mining Co.*, 15 Utah, 534, 50 P. 834.

Sec. 6821, Comp. Laws Utah 1917, provides:

"In all cases, the court may direct the jury to find a special verdict in writing upon all or any of the issues, or may instruct

them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon."

As held by the cases above cited, and in *Bunce* v. *Pace*, 61 Utah, 74, 210 P. 984, it is largely within the discretion of the trial court whether special questions shall be submitted to the jury, and unless a clear abuse of discretion is shown in that regard the refusal to submit such in- **14, 15** terrogatories is not reversible on appeal. A majority of the court are of the opinion that the trial court did not abuse its discretion and committed no error in refusing to submit the special interrogatories.

It is claimed that the verdict of $9,000 is excessive. It is not necessary to review the evidence relating to respondent's injuries. It is sufficient to say that it cannot be said from the evidence that the verdict is excessive as a matter of law—nor can we say that in view of the injuries **16** suffered by respondent the verdict was based on passion and prejudice, and unless we can from an examination and consideration of the evidence arrive at one or the other of these conclusions, we have no right to interfere with the discretion of the trial judge in overruling the motion for new trial and in refusing to change the amount of the verdict. *McAfee* v. *Ogden U. R. & D. Co.*, 62 Utah, 115, 218 P. 98.

We find no reversible error in the rulings on the admission and rejection of evidence.

Upon consideration of all that appears in the record, we are constrained to hold that the judgment should be upheld, and it is therefore affirmed.

GIDEON, THURMAN, and CHERRY, JJ., concur.

FRICK, J.

I concur in the affirmance of the judgment. I do so, however, for the reason that in my judgment the facts and circumstances disclosed by the record clearly bring the case

within the exception to the general rule that contractors are not liable to third persons for improper material used in or for defective construction of a given work or instrumentality after such work or instrumentality has been received, accepted, and put in use by the contractee. Whether a contractor remains liable necessarily largely depends upon the character and use of the instrumentality or work which causes injury to third persons. If, as in this case, the instrumentality is one that is necessarily in constant use in a public place like a hotel and must be used by many persons so as to expose them to great danger, a greater degree of care is imposed upon the contractor than if the instrumentality were to be used for ordinary purposes only. In imputing the necessary knowledge to the contractor of the defective material or construction of the work or instrumentality, the jury may consider what has just been said in connection with all the facts and circumstances of the case on trial, including the length of time the instrumentality has been in use before the defect manifested itself and resulted in injury to third persons. In view of all the facts and circumstances disclosed by the record, the findings of the jury, in my judgment, should not be interfered with by this court.

At first blush I was of the opinion that the district court had committed error in refusing several of appellant's requests to charge the jury, but upon a careful examination of the requests I have become convinced that all of them were faulty in some respects, in that the propositions stated in them were either too favorable to appellant or did not fully reflect the evidence.

Nor did the court commit error in refusing to submit to the jury appellant's special interrogatories. In repeated decisions of this court, whether special interrogatories shall be submitted or not has been held to be within the sound legal discretion of the trial court, and, unless it is apparent that the exercise of that discretion has resulted in prejudicial error, this court may not reverse a judgment upon that ground.

On Application for Rehearing.

PER CURIAM. An ingenious argument accompanies the petition for rehearing. The failure of the court to give the jury an instruction referring to knowledge of the imminence of danger by the contractor is now, for the first time, urged as prejudicial error. The request was as follows:

"If after considering all of the evidence in the case you are not able to say that you are satisfied by a preponderance or greater weight of the evidence that Otis Elevator Company knowingly rendered the elevator imminently dangerous by the manner in which the cables were installed, then your verdict should be in favor of the defendant Otis Elevator, no cause of action."

Counsel for appellant say in their brief on rehearing, and italicize the language, that "nowhere in this court's opinion is this requested instruction specifically referred to."

Why should it have been referred to, specifically or otherwise, when counsel for appellant did not regard it of sufficient importance for argument? In no manner did they call attention to this request in their several briefs until now, when they attempt to raise another and new issue in the argument for a rehearing. It is a well-established rule in this jurisdiction that when an assignment is ignored in the briefs of the party who assigns the error, the alleged error is deemed abandoned and waived and is not thereafter subject to resurrection. An equally serious objection is that the requested instruction was itself insufficient and did not fully and in detail announce the law proposition involved. To inform the jury that they must be "satisfied by a preponderance or greater weight of the evidence that Otis Elevator Company knowingly rendered the elevator imminently dangerous," without adding in substance "or under the particular circumstances of the case should have known the condition by it created," would not only have been an incomplete statement of the law, but would have been misleading and confusing. True, knowledge on the part of the contractor is mentioned in one instance by this court without qualification; but no

one who reads the opinion can have any good reason for misapprehending our position on this question, and that is:

"If a contractor does defective work which renders the instrumentality dangerous, he becomes liable in damages to one injured, if he knew, or, under the particular circumstances, should have known, that the instrumentality was delivered to the contractee in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger."

The contention now made by appellant is not sustainable: First, because the assignment of error was waived; and, second, because the requested instruction, though correct as far as it went, was incomplete and therefore would have been misleading. Error cannot be predicated upon a refusal to give such an instruction.

Other questions are discussed by appellant's counsel, the argument being in substance a repetition of 19, 20 what was presented in the former briefs. All that has been urged and argued by counsel in favor of the petition for rehearing has been given due attention and careful consideration. However, we fail to perceive any good reason for granting appellant's petition for rehearing, which is therefore denied.